21 120
170 320
21 120
78a 392

THE TRUSTEES OF SCHOOLS OF TOWN. 23 N., R. 1 E., Plaintiffs in Error, *v.* JAMES ALLEN *et al.*, Defendants in Error.

ERROR TO McLEAN.

The eleventh section of the act of 1847, requiring the school commissioners to keep certain books for purposes connected with the sale of school lands, is directory to the commissioners. But a commissioner might sell such land, and if legally and fairly sold, the title would not depend on his obeying these directions.

Trustees of Schools *v.* Allen et al.

Whether a township contains the number of inhabitants necessary to authorize the sale of an entire school section, is a fact for the school commissioner to determine, before he makes the sale of the land.

After a patent for school lands has issued, in the absence of fraud, proof will not be required to show that the property was advertised for sale according to the statute; enough must be presumed in favor of these sales, if unstained by fraud, to sustain them. It is to be presumed that the school commissioner has performed his entire duty concerning such sales.

The acts of two school trustees, in dividing and appraising school lands to be offered for sale, are valid. It is unnecessary for the third trustee to join with them, or be notified of their proceedings.

IT is alleged in the bill filed in this behalf, that sometime about the 28th day of September, 1850, the school commissioner of McLean county, illegally sold to William H. Allen and James Allen, Jr. That this sale was illegal and void, because the prerequisites of the law had not been complied with; that the said Allens had received a patent from the governor; but as the sale to them was illegal and void, they hold the legal title in trust for the inhabitants of the township; and prays for a decree.

The defendants filed their answer, and deny the allegations of the bill. Upon which the complainants filed their replication.

STUART & EDWARDS, and O. T. REEVES, for Plaintiffs in Error.

A. LINCOLN, for Defendants in Error.

BREESE, J. The grounds for the relief prayed by complainants are not established by any testimony they have adduced, nor does it cast upon the case the slightest shadow of fraud on the part of the defendants, or others concerned in the sale of the land.

It is urged that the prerequisites of the act authorizing a sale of school lands have not been complied with, in this, that the school commissioner kept no record of the sale.

The 11th section of the act of 1847, under which the sale in question was made, (Laws of 1847, p. 121,) required the school commissioner to keep four separate books, in one of which he was to record at length, all petitions presented to him for the sale of the school lands, and the plats and certificates of valuation, etc.; in another, an account of all sales, with date of sale, name of purchaser, description of land sold, and sum sold for; in another, a regular account of money received for land sold, and paid over to the township treasurer, or loaned, and to whom, etc.; and in the other book a just account of all moneys received on all accounts, and its disbursement.

This is directory to the commissioner, but the title to the land he might sell, if legally and fairly sold, could hardly be made to depend on his obeying these directions.

The 9th section of the revenue act of January 19th, 1829, required a deposit of copies of the advertisement of sale with the Auditor, Treasurer and Secretary of State, and the forwarding of others to the clerks of the County Commissioners' Courts of the respective counties, was held to be directory only to the officers named in the section, and a failure on their part to comply with the statute did not invalidate a sale for taxes, the sale being good in every other respect. *Vance* v. *Schuyler*, 1 Gilm. R. 160.

It is also said, the record does not show there were fifty white inhabitants in that township, nor does it show an advertisement and sale as required by the act of 1847, sections 16–19, 20.

The proviso in section 16 is as follows : " *Provided,* That no whole section shall be sold in any township containing less than fifty inhabitants."

There is proof in the record that the number of white inhabitants residing in that township, over twenty-one years of age, amounted to thirty-seven, at the time the petition for the sale was presented to the school commissioners, which was February 17, 1848.

This was a fact for the commissioner to determine from the *data* before him, and we must presume a township showing so large a number of inhabitants over twenty-one years, must have had at least thirteen under that age. At any rate the commissioner was satisfied, and there is other proof in the record, that at no time from the 15th of December, 1847, preceding the presenting the petition, was there less than that number, but " very many more."

Again it is said, there was no proof that the sale was advertised in the mode required by the 20th section. That section required that notices should be posted in at least six of the most public places in the county, forty days before the day of sale, describing the land, and stating the time, terms and place of sale, and if any newspaper is published in the county, in that also for four weeks previous to the sale.

After the lapse of ten years, the proof on this head must be expected to be imperfect. But it must be presumed, the notice was given as required, else the school commissioner would not have offered the land for sale. He must be presumed to have discharged his whole duty, in the absence of proof to the contrary.

But we do not consider these points of much, if any, importance, as, since a patent was issued, and the legal title become

vested, and no fraudulent act shown, it would be unreasonable to require this kind of proof. Enough must be presumed in favor of the regularity of these sales, if unstained by fraud, to sustain them.

This court said, by CATON, J., in *Nealy* v. *Brown et al.*, 1 Gilm. R. 13, " The laying out and opening roads is not an exercise of judicial powers, and hence, the position that no presumptions are to be indulged in their favor, is not tenable. As well might he, who is affirming the sale of school land, be required to show that a petition for the sale of the land had been presented by the requisite number of householders of the township."

It is, however, objected, that only two trustees acted in the division of the section, platting and appraising it, and it appears that three trustees were elected in that township, and they all should have participated in the act.

This is true in some cases, where the requirements of a statute are express and positive. There is nothing of this nature in the act of 1847, cited. The 17th section provides " when the petition and affidavits are delivered to the school commissioner, he shall notify the trustees of schools of the township thereof, and the said trustees shall immediately proceed to divide the land into tracts or lots, of such form and quantity as will produce the largest amount of money, of which a correct plat shall be made." " Said trustees shall then fix a value on each lot, having regard to the terms of sale, certify to the correctness of the plat, and referring to and describing the lot in the certificate, so as fully and clearly to distinguish and identify each lot ; which plats and certificates shall be delivered to the school commissioner, and shall govern him in advertising and selling said lots."

Now here is nothing to be done by the trustees which could not be done by two of them. A section of land can be divided, and in such mode as to produce the largest amount of money, by two judicious men, as advantageously as by three or a greater number, and the valuation of each lot as accurately fixed, and they are as competent to make out the required certificate. When a body of men are referred to as having power to decide a question, it is always understood, unless otherwise expressly declared, that the majority shall decide. It may be, for aught that appears, the third trustee was consulted, and for reasons not known, declined to act. And we have a right to presume such was the fact. In such case the appellants admit, the acts of the majority would be valid and binding. No notice is shown to the trustee not acting, nor was any necessary, because it was his duty to act without a notification, and we may pre-

sume he did, and disagreed, or that he agreed and deemed it unnecessary to sign, as a majority had signed.

In the note to the case referred to by appellants' counsel, *Ex parte Rogers*, 7 Cowen, 530, it is said, " Where a public act is to be done by three or more commissioners appointed in a statute, and a competent number have met and conferred, though they separate, and then a majority do the act without the presence of the other, the act seems good in construction of law; though it is otherwise when there is a positive statute or charter requiring that a full board should be present at the consummation."

In *The King* v. *Beeston*, 3 D. & E. 325, it was held, under the 9 Geo. 1, ch. 7, sec. 4, which leaves the churchwardens and overseers, with the consent of the major part of the parishioners, to contract for the providing for the poor, it is not necessary that all the churchwardens and overseers should concur; the contract of a majority of them will bind the rest.

In *Grindley* v. *Barker*, 1 Bos. & Puller, 236, Eyre, C. J. said, " I think it is now pretty well established that where a number of persons are entrusted with powers, not of mere private confidence, but in some respects of a general nature, and all of them are regularly assembled, the majority will conclude the minority, and their act will be the act of the whole. The cases of corporations go further—there it is not necessary the whole number should meet; it is enough if notice be given; and a majority or a lesser number, according as the charter may be, may meet, and when they have met, they become just as competent to decide as if the whole had met."

Coke, in his Commentaries on Littleton, 181 *b*, says, in express terms, that in matters of public concern, the voice of the majority shall govern.

To the same point is *Withnell, Clerk*, v. *Gartham, Clerk*, 6 D. and E. 388.

The record being silent as to the fact of the third trustee participating in any manner, it would not be a far-fetched presumption that he was notified of the action of his co-trustees, and confided in their action. Even this bill of complaint is filed by two only of the trustees.

These trustees were a corporation, to all intents and purposes; could sue and be sued in their corporate name. If so, the third trustee need not to have met for consultation or action with his fellows.

The case, as shown by the proofs in the cause, is wholly destitute of any indication of fraudulent act or intent, in any quarter by any party. The most that can be said about it is, there are omissions to perform certain acts which the statute required; but which not being performed, in the absence of fraud, should

not be permitted to invalidate a patent issued by the State which the statute declares, section 28, " shall operate to vest in the purchaser a perfect title in fee simple."

It would be hard indeed, if one of our farmers, whose all was his land, should, after receiving a patent for it from the United States or from this State, be deprived of it because some careless official in some public office, had omitted to do some act the law required him to do before the patent could issue. The public and individuals have a right to repose upon the patent issued by the government, and that it shall not be attacked except for fraud, or as having issued without law.

The testimony shows that full value was paid for the land at the time it was sold. It is only by the wonderful and magnificent improvements that have been made in that beautiful region since 1851, that has so enhanced the value of all the land in that region, that this sale is sought to be disturbed. It may be a misfortune and loss to the county that the sale was made so soon, but being made fairly and not in violation of any law, it must stand. The decree is accordingly affirmed except as to the costs, it being provided by statute that trustees of schools pay no costs. *Trustees of Schools* v. *Walters*, 12 Ill. R. 154.

*Decree affirmed.*