# JOHN W. GRANTHAM

*v.*

# SAMUEL T. ATKINS.

1. SWAMP LANDS—*effect of acts granting.* The act of congress of Sept. 20, 1850, granting swamp and overflowed lands to the States in which they lie, does not create a title *in presenti*, the fee simple remaining in the United States until patent is issued. The laws of March 2, 1855, and March 3, 1857, show such to be the clear intention of congress.

2. RIGHT OF ENTRY. The right of private entry continued until the actual issue of patent to the State, notwithstanding the land in controversy had been reported and confirmed as swamp land enuring to the State.

3. CONFLICTING PATENTS. The oldest patent carries the title in fee simple, and leaves nothing upon which the second patent can operate.

4. CANCELLATION. It follows that the commissioner of the general land office had not the power to order the cancellation of the prior patent.

5. A third party can not, in a collateral issue, attack the validity of a patent properly issued.

APPEAL from the Circuit Court of DeWitt county; the Hon. THOMAS F. TIPTON, Judge, presiding.

On the 10th day of May, 1870, the appellee, Samuel T. Atkins, obtained a patent from the United States to the north half of the southeast quarter of section 35, town 21 north, range 2 west of the third principal meridian, in Logan county, having entered the same and received the usual certificate therefor in August, 1869. At the date of the patent, the tract was claimed by Logan county as swamp and overflowed land, under the act of congress of September 20, 1850. It had been reported by the surveyor general as swamp and overflowed land, and that report had been officially confirmed. But the tract had not yet been patented to the State of Illinois, being, through mistake, omitted in the making of patents of neighboring swamp lands. But on the 4th day of January, 1871, a patent was issued to the State. On the 23d day of the same

month a transcript of this patent, confirming the land to the county of Logan, was filed in the office of the clerk of that county.

But previously to this time, in October, 1870, Atkins had commenced his suit in ejectment against John Stucky and the appellant herein, John W. Grantham—Grantham being tenant of Stucky, who held as the agent of the county. It appears, also, that Atkins had procured from one Norton a quit-claim deed to the same land, July 16, 1870, Norton having made improvements upon it; also, that Grantham occupied and cultivated 20 acres on the east end of the tract at the commencement of the suit.

On the 15th of December, 1870, the commissioner of the general land office instructed the register and receiver of the land office at Springfield as follows: "The said tract being a valid swamp selection, made in 1853, which properly enures to the State, and must be approved thereto, you will advise Mr. Atkins of these facts, and notify him to return said patent to you, that the same may be transmitted to this office, for cancellation." Atkins, however, declined to return the patent.

To the declaration in ejectment, the plea of the general issue was interposed. The case was removed by change of venue to Clinton county, and trial had by the court at the May term, 1871; decision filed at the November term, 1871, and verdict not guilty as to Stucky, and Grantham guilty as to 20 acres off the east end of the land in controversy. Grantham brings the case by appeal to this court, upon bill of exceptions.

The laws of congress upon which the points in the case are made are given in the opinion.

Mr. S. C. PARKS, and Messrs. BEASON & BLINN, for the appellant, cited *Lytle* v. *State of Arkansas*, 22 Howard, 193; *Stark* v. *Staus*, 6 Wallace, 402; *Stoddard* v. *Chambers*, 2 Howard, 284; *Ballance* v. *McFadden*, 12 Ill. 318; *Garner et al.* v.

*Willett,* 18 Ill. 455; *Wilcox* v. *Jackson,* 13 Peters, 498; *Tessoint et al.* v. *Price,* 12 Howard, 59; *New Orleans* v. *United States,* 10 Peters, 662; *Minter et al.* v. *Crommelin,* 18 Howard, 87; *Harkness and Wife* v. *Underhill,* 1 Black, 316; *Garland* v. *Winn,* 20 Howard, 8; *Railroad Co.* v. *Smith,* 9 Wall. 96.

Messrs. MOORE & WARNER, and Messrs. HAY, GREENE & LITTLER, for the appellee, cited *Rogers* v. *Brent,* 5 Gilm. 584; *Jackson* v. *Horder,* 4 Johns. 211; *Den* v. *McKnight,* 6 Halsted, 385; *Stringer's Lessee* v. *Young,* 3 Peters, 320; *Boardman* v. *Reed,* 6 Peters, 328; *Cook* v. *Foster,* 2 Gilman, 652; *Aldrich* v. *Aldrich,* 37 Ill. 32; *Beatty* v. *Sale,* 43 Ill. 351; *Field* v. *Seabury,* 19 Howard, 323.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The chief defense to this action of ejectment is, that the land to which the plaintiff had a patent from the United States was swamp and overflowed land, and as such, and prior to the entry, the title was vested in the State, by force of the act of Congress of September 28, 1850. Brightley's Digest, 492.

The true construction of the several acts of congress is, that these lands were subject to purchase until the law was complied with and the patent was issued to the State.

The first section of the act of 1850 enacts that the whole of the swamp and overflowed lands shall be and the same are hereby granted to the States. If there were no other provision, it might well be said that an absolute grant was made. The second section, however, provides that a list of the lands shall be made by the secretary of the interior and transmitted to the governor, and, on the request of the governor, a patent shall issue, "and on that patent the fee simple to said lands shall vest in the State."

Congress made a grant of the lands, and then directed the mode in which it was to be executed, and named the act

which should vest the title. The second section must control the first.

It is a settled rule that statutes must be so interpreted, as to give effect to the whole; and one part must be so construed by another, that the whole may stand.

If we make an absolute grant by the first section, then we nullify the second. If the intention was that the title should be vested by the first, then the words in the second, "and on that patent the fee simple to said lands shall vest," are useless and inoperative.

The correct conclusion to be drawn from both sections is, that a grant was made which would vest the title, upon a compliance with the law in making the required list and the issue of a patent.

This construction is fully sustained by the subsequent legislation of congress in relation to the same subject matter.

On the 2d of March, 1855, congress passed a law entitled "An act for the relief of purchasers and locaters of swamp and overflowed lands."

The first section directed the president to issue patents to all purchasers of swamp lands who had made entries prior to the issue of patents to the States, and reference was made to the act of September 28, 1850, by its date and title.

The second section directed a return of the purchase money to the State, upon proper proof.

Though the title can not control the plain words in a statute, it is entitled to some consideration.

The title of this act shows that the statute was intended to relieve purchasers of swamp lands. Why should congress attempt relief if the United States had parted with the title? Why should it direct the president to issue patents to these same lands to purchasers at private entry, if the title had vested in the States in 1850?

We can not escape the conclusion that congress recognized the swamp and overflowed lands as belonging to the United States until the issue of the patent to the State.

Again, on the 3d of March, 1857, congress passed another law upon the subject of swamp lands, and in it referred to the act of 1850. By the act of 1857, the swamp and overflowed lands as granted by the act of 1850 were confirmed to the States, " so far as the same shall remain vacant and unappropriated."

If they had been entered or appropriated, then they were not confirmed to the States. Thus, in unequivocal language, we have a plain recognition of the right of private entry, and of the right of congress to appropriate.

We are of opinion that there is not a doubt upon which even a plausible argument can be based that the title to the swamp and overflowed lands did not vest in the State until the issue of a patent. We must therefore recognize, as the best evidence of title, the patent to the purchaser, and not the subsequent patent to the State.

As we hold that the land was subject to entry, and the patent was lawfully issued to the purchaser, a third party can not, in ejectment, question its fairness, or attack it collaterally for fraud.

The judgment of the court below is affirmed.

*Judgment affirmed.*