# Josiah Thompson

*v.*

# Edward Prince.

1. Limitation—*as against the United States and its grantee.* Where land, the title to which was in the United States, had been sold for taxes thereon, and the purchaser had been in possession under his tax deed, and paid all taxes assessed thereon for more than seven successive years before suit brought, and before the land was granted by patent by the United States: *Held*, in ejectment by the patentee against such party in possession, that the action was not barred by any statute of limitations.

2. SWAMP LANDS—*title did not pass by act of Sept. 28th,* 1850. The act of Congress of Sept. 28, 1850, relating to swamp and overflowed lands, did not, of itself, operate as a grant of such lands to the several States in which they were situated, without any act of segregation. Under such act lists and plats were required to be made, and a patent to issue, before the fee in the lands should be vested in the several States.

3. GRANT—*where patent not necessary.* Where an act of Congress makes, in express terms, a grant of specific lands belonging to the United States, no patent or other assurance is necessary to pass the fee to the grantee. But if anything remains to be done by the grantor or grantee to consummate the grant after the passage of the law, it will not take effect and vest the title until such act has been performed.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

This was an action of ejectment, commenced March 17, 1871, by Edward Prince, against Josiah Thompson, the appellant, for the recovery in fee of the west half of sec. 34, in township 3 south, range 8 west, in Adams county.

A trial was had resulting in a judgment in favor of the plaintiff, from which the defendant appealed. The facts relating to the title are stated in the opinion of the court.

Messrs. WHEAT & MARCY, for the appellant.

Messrs. BROWNING & BUSHNELL, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The certificate of entry and patent granted in pursuance thereof, which were offered in evidence, constitute proof of paramount title in appellee to the land in controversy, if the government could rightfully sell it to him. On the trial, appellant, against the objection of appellee, proved the land had been listed for taxes in 1857, and not being paid, it was sold at the tax sale in 1858, for non-payment thereof. He also gave in evidence tax deeds, regular in form, issued to him in pursuance of the sale, and proved he had been in the actual possession; and paid all taxes thereon, since 1859.

It is in evidence that the land and every legal subdivision is swamp and overflowed land, being situated near the Mississippi river, and is overflowed as often as once in every two or three years.    Without artificial drainage it is not susceptible of cultivation.

The land was entered by appellee on the 15th day of June, 1870, and no period fixed by statute having since elapsed, it is not insisted in this court that appellee's right to possession is barred by any statute of limitations.

The defense relied on is, the land is swamp and overflowed land, within the meaning of the act of 1850, and Congress, by that act, having granted all such land within the limits of the State of Illinois to the State, and the State to the respective counties in which the lands are situated, the paramount outstanding title is now in the county of Adams, where this land is located, and the government could not lawfully sell it to appellee after having previously granted it to the State.

The question involved depends upon the construction that shall be given to the act of Congress of September 28, 1850, entitled "An act to enable the State of Arkansas and other States to reclaim swamp lands within their limits."    9 Stat. at Large, 519.

It is urged, by virtue of the grant itself, the United States parted with the whole title to all that class of lands designated in the act, and the same vested on its passage in the several States to which it was by its terms made to apply, without any act of separation on the part of the grantee or any officer of the government.

This is undoubtedly true where Congress, in express terms, makes a grant of specific lands.    The patent is simply evidence of the grant, and performs no other office.    Where Congress, by legislative grant, has appropriated specific lands to an individual or a State, there is certainly no other assurance needed to pass the fee.

It does not seem to us to be the true construction of the Swamp Land Act of 1850, that, of itself, it grants the fee of all

swamp and overflowed lands to the several States in which they are situated, without some act of segregation. Manifestly, if any thing remains to be done by the grantor or grantee to consummate the grant, after the passage of the law, it will not take effect and vest the title until such act has been performed.

Our view will be aided by a reference to the law itself. The first section declares all swamp and overflowed lands within the limits of Arkansas remaining unsold after the passage of the act "shall be, and the same are hereby granted to said State."

The second section provides that "it shall be the duty of the Secretary of the Interior, as soon as may be practicable after the passage of this act, to make out an accurate list and plats of the lands described as aforesaid, and transmit the same to the Governor of the State, * * * * and at the request of the said Governor, cause a patent to be issued to the State therefor, and on that patent the fee simple to said lands shall vest in said State, * * * * subject to the disposal of the legislature thereof."

The third section declares, in making out the lists and plats of the lands, all legal subdivisions the greater part of which is "wet and unfit for cultivation," shall be included, but when the greater part is not of that character, the whole shall be excluded.

The fourth section extends the benefit of the act to all other States having that class of land within their limits.

The comprehensive words of the first section are obviously limited by that which is contained in the subsequent sections. The language employed indicates unmistakably that it was the intention of Congress the lists should be made, and the patent issued, before the fee in the lands should be vested in the several States. It is difficult to understand how any other construction can be given to the second section. And this view is strengthened by the fact that in the third section the

quality of the land to be included in the lists and plats is described.

Congress certainly did not intend to grant any lands other than those that should be included in the lists and shown on the plats to be furnished by the Secretary of the Interior. How else could it be known what lands did, in fact, pass by the grant? Only such legal subdivisions, the greater part of which was " wet and unfit for cultivation," were intended to be granted, and the class of lands designated could be ascertained in no other way so well as by the lists and plats. The grant could not become definite and certain until the lists and plats should be furnished according to the provisions of the act. The result has shown this was a wise and necessary provision. It would not do to leave it to be determined by parol evidence, in every case, what legal subdivisions the greater part of which answered the description contained in the act, and therefore passed by the grant. That would lead to vexatious and complicated litigation. *Grantham* v. *Atkins,* 63 Ill. 359.

It does not appear that the land in controversy was included in the list or shown on the plats made by the Secretary of the Interior to the State of Illinois. Neither the State, nor the county of Adams, in which it is situated, ever claimed any interest in the land. Having never been separated from the other public lands by any act of the government or its officers, we are of opinion the fee did not pass to the State merely by the passage of the Swamp Land Act of 1850.

If it was in fact swamp land, and we have no doubt it was, the State, if it desired to avail of the benefits of the grant, ought to have taken steps, before the government conveyed it, to have the title confirmed and the patent issued. Having failed to do so, appellee could lawfully enter it, and his title is paramount and must prevail.

The judgment of the circuit court must be affirmed.

*Judgment affirmed.*