GEORGE KELLER

v.

FRANKLIN W. BRICKEY.

1. SWAMP LANDS. Under the act of Congress of September 28, 1850, the title to the swamp and overflowed lands of the United States within this State, unsold, was vested *ipso facto* in the State of Illinois, and a patent for a tract of such land, made by the United States after the passage of that act, passes no title.

2. SAME—*what is swamp land.* It is not necessary, to constitute swamp and overflowed land, within the meaning of the act of Congress, that it should be overflowed annually. It is sufficient if it is subject to overflow, requiring artificial means to subject it to beneficial use.

APPEAL from the Circuit Court of Jackson county; the Hon. M. C. CRAWFORD, Judge, presiding.

Mr. JAMES M. DILL, Mr. A. S. WILDERMAN, and Mr. L. P. BUTLER, for the appellant.

Mr. WILLIAM J. ALLEN, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was ejectment, in the circuit court of Randolph county, and by change of venue taken to Jackson county, and there tried by the court without a jury, resulting in a judgment for the plaintiff.

The controversy is between the grantee of the patentee from the United States and a settler upon the land, claiming the same under the State as swamp and overflowed land, by deed duly executed by the county clerk of Randolph county.

The patent under which the plaintiff claims bears date August 15, 1860, and the deed from the county clerk is dated January 29, 1862.

It is claimed by plaintiff in the action, that the land in controversy is not swamp and overflowed land of the description granted to the State by the act of Congress of September

28, 1850, entitled "An act to enable the State of Arkansas, and other States, to reclaim swamp and overflowed lands within their bounds."

The direct proof on this point is that of Anton Blais, who had been familiar with the tract in question since 1833 or 1834, who testified it was heavily timbered, rather low and wet, and not fit for cultivation until 1858 ; more than half of it was low and wet in 1849, and before ; after it was donated to the county, the lands around it in better condition were bought up ; there were some ridges in it that were pretty good ground ; they were scattered over it ; were not large, and the rest of the land was swampy ; it is about three-fourths of a mile from the Mississippi river ; the land near the river is better ; this tract was overflowed in 1826, 1836, 1844, and 1858, and perhaps other years ; it was all overflowed those years ; we rowed over it in skiffs, the water in some places being ten feet deep ; when overflowed, the water would remain in some places until winter. It was sold to witness by the county as swamp land, and was conceded so to be.

There was no evidence whatever conflicting with this.

The deed from the county clerk to Blais recites that, in pursuance of the act of the General Assembly of this State, entitled "An act to dispose of swamp and overflowed lands, and to pay the expense of selecting and surveying the same," approved June 2, 1852, and an act to extend said act, approved March 4, 1854, James H. Watt, drainage commissioner of Randolph county, did, on the 9th day of September, 1857, expose said land to public sale, the same being a part of the swamp and overflowed lands granted by the United States to the State of Illinois, by an act entitled "An act to enable the State of Arkansas, and other States, to reclaim swamp and overflowed lands within their bounds," approved September 28, 1850, and that there were no bidders for the same.

The evidence here presented, and this action of the county, are quite sufficient to show this tract was swamp land. It would be more satisfactory did the deed recite further, that it

was contained in the list of swamp lands furnished by the Auditor, which the act of the legislature required him to furnish to the several counties ; but, as it is, it is strong evidence the land was swamp and overflowed land, in the purview of the act of Congress. It was not intended by that act that the land should be overflowed annually, but that it was subject to overflow, requiring artificial means to subject it to beneficial use. That it was swampy, and the greater portion of it wet and unfit for cultivation, the evidence of Blais fully establishes.

The tract in question being of the description embraced in the act of Congress of September 28, 1850, it became, at that date, the absolute property of the State, subject to its control, and in which the government of the United States, thenceforward, had no interest, and could not sell it to another.

That this is the doctrine, is clearly established by the case of the *Railroad* v. *Smith,* 9 Wallace, 96, where the subject is fully discussed. That these lands so granted to the States were, by various acts of the legislature, vested in the counties in which they are situate, appears by the acts cited, and by the last act passed on the subject, approved February 14, 1859. Sess. Laws, 1859, p. 201.

Whatever this court may have decided in respect to the condition of the title to these lands, the Supreme Court of the United States, whose prerogative it is to construe acts of Congress, must be regarded as authoritative on this question. That court having decided that, by the terms of the act of September 28, 1850, the title to these lands vested *ipso facto* in the State, the State, having competent authority, passed the title to the counties, and to Randolph county among others.

The title being in that county, it was sold by the proper officer of the county at private sale, there being no bidders for it at the public sale, and this in strict conformity with section 19, of the act of 1852. Sess. Laws, 1852, p. 183.

By section 11, of the act of 1854, (Sess. Laws 1854, p. 21,) the deed of the county clerk vested in the purchaser the absolute title, in fee simple, to the land described in it, being the land in controversy.

The court erred in finding the title in the plaintiff, and for the error the judgment is reversed and the cause remanded.

*Judgment reversed.*

Mr. CHIEF JUSTICE SCOTT : I adhere to the construction given by this court to the Swamp Land Act of 1850 in *Thompson* v. *Prince*, 67 Ill. 281, and refer to the opinion in that case for an expression of my views. In harmony with that case is the case of *Burgess* v. *Gray et al.* 16 Howard, 48.