The Wabash, ·St. Louis and Pacific Railway Company *et al.*

*v.*

Isaac McDougal *et al.*

*Filed at Springfield May 14, 1885.*

1.  Swamp and overflowed lands—*of their identification as such—as to time and manner of so doing.*    The act of Congress approved September 28, 1850, vested the legal title to all the swamp and overflowed lands in the State, without any further act being done to identify or segregate them from other lands; and the legislature, by its several acts, granted the same

to the counties in which they were situated. The fact that lands fell within the description of "swamp and overflowed lands," can be proved by witnesses whose personal knowledge enables them to testify as to their character and condition.

2. The several counties in this State were absolutely invested with the legal title of all the swamp and overflowed lands situated within their boundaries, without the Auditor's certificate of what lands were of that character, and parol evidence was competent to show that a tract fell within the description of swamp and overflowed lands. The Auditor's certificate, whether issued before or after the sale of such lands by a county, is made evidence of the character of the same. The words in such certificate, "not heretofore patented to the county," will not vitiate it, and may be disregarded.

3. Same—*sale by a county—presumption in favor thereof—who may dispute its validity.* If the county court could not sell and convey swamp land until after the return of plats and a valuation thereof, in the absence of proof to the contrary it will be presumed that this was done before a sale and conveyance of a tract of land. But a party claiming no title can not be allowed to dispute the validity of a conveyance by the county, where it retains the consideration paid therefor, and no steps have been taken to set the same aside.

4. Same—*deed for swamp lands from a county—as to the mode of its execution—acknowledgment.* A conveyance of a tract of swamp land made by a county, under the act of 1854, is not required to be acknowledged by the county clerk; and an order of the county board requiring him to acknowledge the deed, will be construed to mean nothing more than to attest it with the seal of the court and deliver it to the purchaser, as the county court has no power to require anything more than that.

5. Same—*misrecital in deed, as to the date of the act under which it is made.* It being wholly unnecessary for the county clerk to recite in his deed for swamp land sold by the county court, the act under which it is made, a mistake in the date when the act was approved will be immaterial, and may be disregarded.

6. Practice—*waiver of error assigned.* Where an appellant in his argument insists only upon one of the various errors assigned, the others will be considered as waived.

Appeal from the Circuit Court of Menard county; the Hon. Lyman Lacey, Judge, presiding.

Mr. George B. Burnett, for the appellants.

Mr. Edward Laning, and Mr. N. W. Branson, for the appellees.

Mr. Justice Tunnicliff delivered the opinion of the Court:

This was an action of ejectment, brought by appellees, against appellants, to recover a strip of land, fifty feet wide, on each side of the railroad track of the latter, running through the north-west quarter of section 11, and the north fractional half of section 10, in township 19, north of range 8, west, in Menard county, which resulted in a judgment for appellees, and appellants bring the case to this court, and assign various errors upon the record, but in argument insist only upon those relating to the power of the county court of Menard county to sell and convey the land in controversy, and the admissibility in evidence of the deed purporting to have been made by the county clerk in pursuance of an order of the county court, to Bennett, through whom plaintiffs, by *mesne* conveyances, derive their title. The other exceptions may therefore be considered as waived.

The land is swamp land granted by the government of the United States to the State of Illinois, by the act of Congress approved September 28, 1850, and by the State of Illinois to Menard county, by the act of the General Assembly of 1852, (Sess. Laws of 1852, p. 178, sec. 1,) whereby the State grants directly to the counties of the State, respectively, all swamp and overflowed lands which lie within the same, that were granted to the State by said act of Congress; and the act of 1854 (Sess. Laws of 1854, p. 21, sec. 12,) reaffirms the grant of these swamp and overflowed lands, by declaring that they "are hereby granted to and invested in the several counties in which they are situated."

The counsel for appellants argues that no title was shown in Menard county to these lands, because the act of Congress did not specifically describe them, but only by the general term of "swamp and overflowed lands," and that consequently no title passed to the State without some act of segregation, as contemplated by that act, and to sustain this view cites

the case of *Thompson* v. *Prince*, 67 Ill. 281, in which this court gave that construction to the act of Congress in question. At the time this decision was made, the attention of the court was not called to the case of *Railroad Co.* v. *Smith*, 9 Wall. 95, in which the Supreme Court of the United States had held that under the act of Congress the title to swamp and overflowed lands became, *ipso facto*, vested in the State, and that it could not be deprived thereof because the Secretary of the Interior had neglected his duty, and failed to furnish the State with the evidence, as he was directed to do by the act, as to what lands came within the description of "swamp and overflowed lands," but that such fact could be proved by any witnesses whose personal knowledge would enable them to testify as to the character and condition of the tracts. Afterwards, this question again came before this court in *Keller* v. *Brickey*, 78 Ill. 133, when it was held, on the authority of *Railroad Co.* v. *Smith, supra,* that the act of Congress vested the title to these lands in the State without any further act being done, and that *Thompson* v. *Prince* must be overruled. The court say: "Whatever this court may have decided in respect to the condition of the title to these lands, the Supreme Court of the United States, whose prerogative it is to construe acts of Congress, must be regarded as authoritative on this question. That court having decided that by the terms of the act of September 28, 1850, the title to these lands vested, *ipso facto*, in the State, the State, having competent authority, passed the title to the counties."

It is said the case of *Railroad Co.* v. *Smith, supra,* has been shaken by the subsequent case of *French* v. *Fyan et al.* 93 U. S. 169; but even if that be granted, we should not feel authorized to depart from the rule it announces until the same has been clearly and distinctly overruled by that court.

It is said the county court could not know that these lands were swamp lands, till that fact was certified to it by the Auditor, whose certificate is made evidence of that fact by

the act of the legislature of 1854, and that as his certificate bears date August 4, 1870, whereas the action of the county court in selling the land to Bennett was on March 30, 1870, therefore the sale to him must be void. We think the authorities above cited refute that position, and establish that the county would be absolutely invested with the title to the land whether the certificate which would be evidence of the fact was granted or not. Without the Auditor's certificate, parol evidence would be competent to prove the character and condition of the land, but with the certificate, whether issued before or after the sale, no other evidence would be needed. The words added by the Auditor in his certificate, "not heretofore *patented* to the county," could not vitiate his certificate or change the fact that these were swamp lands, and may be disregarded. No "patents" were issued to the county, but only certificates from the Auditor, and that is the word he doubtless intended to use.

It is also urged that the power of sale by the county did not arise till *after* the surveyor had returned the plats and the valuations had been made, as required by the sixth section of the act of 1852. If this provision is not to be regarded as directory, merely, as held in *Trustees of Schools* v. *Allen,* 21 Ill. 120, the presumption should be, in the absence of proof to the contrary, that the county court discharged its duty in that respect, and did not sell till after the land had been platted and appraised, and that they did not sell for a less sum than they were authorized to do. There is no proof of any fraud on the part of the county court, or on the part of Bennett, the purchaser from it, in this transaction, and the presumption of law is there was none. If there had been, it is probable that some tax-payer of the county would have filed a bill to set aside the sale before the land had passed into the hands of an innocent purchaser. The appellants set up no title in themselves to the land in controversy, but are insisting that the county has not parted with its title, if

it ever had any. They occupy no better position than the
county would had it brought suit to recover back this land
after having once sold it and received the purchase money,
and it had been conveyed in pursuance of its order.

But if any question could arise as to the power of the county
to sell, and order a conveyance of the land, as it did, under
the previous statutes referred to, it is clear to us that they
were clothed with ample power to do so under the act of the
General Assembly of 1859, (Sess. Laws 1859, p. 201,) by the
first section of which it is enacted, that "the county courts
of the several counties of this State are hereby authorized
and empowered to sell and dispose of, at public or private
sale, for cash or credit, or for such securities as the counties
may think proper to accept, all or any of the swamp or over-
flowed lands lying within the respective counties, including,
also, all and every interest, claim, demand and gift granted
to them by the State of Illinois, arising under the act of
Congress passed September 28, 1850, and acts amendatory
thereof." This act is very broad, and was intended to, and
does, cover every tract of land in the county, whether em-
braced in the act of Congress or not, to which the county had
or could have any claim, title or interest, as swamp or over-
flowed lands. That this was swamp land, and was embraced
in the act of Congress granting it to the State, and in the act
of the legislature granting it to the county, can not be suc-
cessfully controverted, and the deed made by the clerk of the
county court, by its order, was sufficient to pass the title to
Bennett, under whom appellees claim title. The land in con-
troversy was included in that specifically described in the deed.

The objection that the clerk did not acknowledge the exe-
cution of this deed before some officer authorized to take
acknowledgments of deeds, is not tenable. The act of the
General Assembly authorizing him to make the deed did not
so require. It was executed in pursuance of the laws of 1854
and 1859. Section 11 of the act of 1854 is as follows:

"The clerks of the county courts, respectively, shall ·execute all deeds for swamp and overflowed lands, and affix the seal of the county courts thereto, which deeds shall vest in the purchaser title in fee simple to the lands therein described." This deed was executed, and the seal of the county court was affixed thereto, precisely as required by the statute. Had the legislature designed to have had any further evidence of the execution of·the deed than this, it is fair to presume that they would have so expressly provided in the act. The order of the county court directing the clerk to acknowledge the deed, should be construed to mean nothing more than to attest it with the seal of the court and deliver it to the purchaser, as that was all the statute required him to do, and the county court had no power to require him to do more than that.

The clerk, in the deed,' states, by way of recital, that he makes it by virtue of the provisions of an act of the General Assembly of the State of Illinois, approved February 14, 1870, entitled "An act for the sale of swamp lands, and an order and decree of the county court," etc., and it is urged that this misrecital of the year in which the act was approved, renders the deed void. It is familiar law that even in the granting part of a deed, if there are two descriptions of the premises intended to be conveyed, one true and the other false, the latter will be rejected as surplusage, and the deed will not thereby be vitiated. *A priori,* such a rule should prevail as to a mere recital. It was wholly unnecessary for the clerk to have recited this act in his deed. He did correctly recite the order of the county court directing him to make the deed, as well as the title of the act authorizing the county to make the sale, and this mere clerical mistake as to the date when it was approved is immaterial, and should be disregarded.

The judgment of the court below is affirmed.

*Judgment affirmed.*