WHITNEY GILBREATH

*v.*

SIMEON DILDAY.

*Filed at Mt. Vernon October 29, 1894.*

1. SWAMP LAND—*absence of seal from Auditor's certificate.* In a suit in chancery to correct the county's deed and to remove a cloud from the title of swamp land, an objection to the admission in evidence of the Auditor's certificate that the land in question was swamp land, because such certificate lacked the seal of the Auditor, will not be sustained, the land being shown by other evidence to be in fact swamp land.

2. SAME—*deed of county corrected in equity.* Where a county sells swamp land it is treated as any other grantor would be, and a bill in equity will lie to correct the county's deed, when defective for want of a seal.

3. SHERIFF'S DEED—*may be corrected in equity.* Where the proceedings are regular leading up to a sheriff's deed, and the deed is defective for want of a seal, it may be corrected in equity.

4. SEAL—*of justice of peace in acknowledgment.* It is not required that the scrawl seal of a justice of the peace, in the acknowledgment of a deed, should follow his name. Its appearance in the certificate preceding the name is sufficient.

5. TAX DEED—*what requisite to its validity.* Under the statute a tax deed is not *prima facie* evidence of the sufficiency of the form and manner of publication, and the proof thereof, and in the absence of evidence of a precept and judgment the tax title is not valid.

6. SAME—*one entering under, not a trespasser.* One taking possession of vacant land under a tax deed is not a mere trespasser, and if required to account for rents and profits should be allowed for permanent improvements, if reasonable and beneficial, as well as for taxes and assessments paid, with interest thereon.

7. POSSESSION—*of land—when essential to give standing in equity.* To enable one to file a bill to remove a cloud from his title he should be in possession of the land, but a bill will lie to correct a mistake in a deed without possession, and a court of chancery having obtained jurisdiction for the latter purpose, and having all the parties before it, may remove a cloud from the title and settle other equities.

8. RENTS AND PROFITS—*how value of rents computed.* Where rent of land to be accounted for by one in possession is corn delivered in crib, the market value of the corn at the time of its delivery is the proper money value of the rent.

APPEAL from the Circuit Court of Jackson county; the Hon. J. P. ROBARTS, Judge, presiding.

Mr. GEORGE W. HILL, and Mr. JAMES H. MARTIN, for the appellant.

Mr. H. CLAY HORNER, for the appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court :

This was a bill in chancery, filed by Simeon Dilday, appellee, against the county of Jackson, Whitney Gilbreath, appellant, and others, alleging that said county was seized in fee of the north half of the north-west quarter of section 2, township 9, south, range 5, west of the third principal meridian, in said county, in 1855, as swamp

land; that on May 3, 1855, said county of Jackson sold said land, with other land, to William McCullough for $114.80 paid by him, and attempted to convey the same to him by deed, which was executed as required by law, in all respects, except that by an oversight of the county clerk who executed the conveyance for the county, the seal of the county was not affixed thereto; that by a regular chain of conveyances the land in controversy, fifty-seven and one-half acres off of the north end (side) of said north half of the north-west quarter of section 2, township 9, south, range 5, west of the third principal meridian, came to appellee; that one link in the chain of title is a sheriff's deed, to which the sheriff did not attach a seal; that in every other respect the chain of title is correct; that such possession of said land was had by appellee and his grantors as the overflowed nature of the land permitted, from the date of purchase from the county for a great many years; that the land was assessed for taxation to this chain of title since the sale by the county in 1855; that appellant got possession of said land under a tax deed, which is alleged to be void; that appellee brought suit in ejectment against appellant in 1890, and failed because of the lack of seals to the county's and sheriff's deeds, of which defects he was then first apprised; that he demanded a deed from the county, which was refused; that he then filed this bill to correct the errors or omissions in said deeds, claiming the equitable, and asking for the legal, title, and asking the removal of appellant's tax deed as a cloud on his title, tendering to appellant the taxes paid by him, but demanding an account of the rents and profits. The county answered, not denying the material averments of the bill. Appellant answered, but made no claim for permanent improvements, alleging *laches*, etc. The circuit court entered a decree substantially as prayed for, from which appellant alone appeals, assigning various errors.

The county of Jackson sold the land in controversy, as swamp land, to one William McCullough for a money consideration paid to it by him, and attempted to convey the land to him by deed, which deed was defective through the failure of the county clerk to attach the seal of the county thereto. McCullough went into possession of this land under said deed, improved it and tried to drain it, he and his grantees being in possession of the land under said deed for many years, paying the taxes and assessments levied on the same. One link in the chain of title of appellee is a sheriff's deed, to which the sheriff failed to attach a seal. No question is made as to the regularity of the proceedings leading up to this deed. These defects in the title were not known to appellee until brought to his notice on the trial of a suit in ejectment brought by appellee against appellant, appellant claiming title and possession under a tax deed. The bill in this case was filed within a year after the discovery of these defects.

That this was swamp and overflowed land at the time it was sold to McCullough, the proof is conclusive. Appellant and all the witnesses say that this has always been swamp land,—the bottom of a pond,—and worthless till drained. The county sold this land, and attempted to convey it, as swamp land. In *Railroad Co.* v. *Smith*, 9 Wall. 95, the Supreme Court of the United States held, that under the act of Congress the title to swamp and overflowed lands became, *ipso facto*, vested in the State, and that it could not be deprived thereof because the Secretary of the Interior had neglected his duty, and failed to furnish the State with the evidence, as he was directed to do by the act, as to what lands came within the description of "swamp and overflowed lands," but that such fact could be proved by any witnesses whose personal knowledge would enable them to testify as to the character and condition of the tracts. In *Keller* v. *Brickey*, 78 Ill. 133, it was held that the act of Congress of September 28, 1850, vested the title to these lands in the

State without any further act being done, and that the State, having competent authority, passed the title to the counties by act of the legislature. (Sess. Laws of 1852, p. 178, sec. 1, and Sess. Laws of 1854, p. 21, sec. 12.) In *Wabash, St. Louis and Pacific Railway Co.* v. *McDougal et al.* 113 Ill. 603, it was held to be established that the county would be absolutely invested with the title to the land, whether the certificate of the Auditor, which is made evidence of the fact by the act of the legislature of 1854, was granted or not, and that without the Auditor's certificate, parol evidence would be competent to prove the character and condition of the land.

The objection to the Auditor's certificate to the county that this was swamp and overflowed land, because such certificate lacked the seal of the Auditor, is purely technical, and in the light of the authorities above cited can not avail here. In selling swamp land, a county, as grantor, is treated as any other grantor would be, and a bill to enforce specific performance would be proper. (*Dart* v. *Hercules et al.* 57 Ill. 446.) To perfect the title, as in this case, as to the deed from the county, the suit was properly brought in equity.

As to the sheriff's deed, to which the sheriff failed to attach a seal, no question is made as to the regularity of the proceedings leading up to this deed. In *Foster* v. *Clark*, 79 Ill. 225, it is held that where, on the sale of land under a decree of foreclosure of a mortgage, there was a mistake in the certificate of sale and deed made by the master in chancery, a court of equity had power to correct the mistake upon a bill filed for that purpose, and that such correction should be made ; and in *Bradshaw* v. *Atkins*, 110 Ill. 323, it was held that a court of chancery had power to correct a mistake in a sheriff's deed upon a bill filed for that purpose, and should do so.

This suit was brought within a year after the discovery of these errors in the county's and sheriff's deeds, and *laches* cannot be attributed to appellee.

In argument it is claimed that to the certificate of acknowledgment of one of the deeds in appellee's chain of title no seal of the justice of the peace is attached. On examination of the record it appears the seal of the justice, —a scrawl,—precedes the name of the justice. This objection is so purely technical that it should meet with but little favor. It is not requisite that the seal of the justice should follow the name, and its appearance in the certificate of acknowledgment preceding the name is sufficient.

Appellant's claim of title is under a tax deed. The record shows a sale of this land for taxes, and the assignment of the certificate to the appellant. No judgment or precept appears in the evidence, nor is there evidence of the publication of notice, further than the recital in the affidavit of appellant that "this deponent caused a proper notice to be published," etc. Whilst a tax deed is, under the statute, (chap. 120, sec. 224,) *prima facie* evidence of certain facts, the sufficiency of the form and manner of publication, and the proof of publication, are not of those facts. No precept or judgment is shown, and the absence of these, with the other defects in the proof referred to, leaves the tax title without sufficient evidence to establish its validity.

To give a person a standing in a court of equity to file a bill to remove cloud from title he should be in possession, yet he may file a bill to reform and correct mistakes in a deed when not in possession, and a court of chancery having jurisdiction for this purpose, and having all the parties before the court, may, as ancillary to its original jurisdiction, remove cloud from title and settle other equities between the parties. The equities of this case are clearly with appellee, and he was entitled to have the deeds from the county clerk and from the sheriff corrected as prayed for in his amended bill, and have the tax deed declared a cloud on his title as decreed by the trial court, where, as here, complainant offers to refund all taxes and costs properly paid.

Appellee asked for an accounting with appellant for rents and profits on said land while in possession of appellant under his void tax deed, tendering taxes and special assessments, and interest thereon, paid by appellant lawfully. There is some question about the good faith of the entry of appellant under his tax deed. Appellee proposed to furnish to mortgagor money to redeem from the tax sale, but did not do so. It does not appear that the mortgagor failed or neglected or refused to redeem because appellant asked him not to, promising to take up the mortgage when he should get his tax deed. Appellant cannot be regarded as a mere trespasser, since he took possession only after obtaining his tax deed, and if required to account for rents and profits, as was properly held, should be allowed for permanent improvements, if reasonable in their character and beneficial to the land, as well as for taxes and special assessments paid, and interest thereon.

The accounting was taken before the master in chancery, exceptions taken and passed on by him, and passed on by the trial court. Appellant owned land on two sides and one end of the land in controversy, and it appears that the same fencing that enclosed about four hundred acres of appellant's land also enclosed this, and that it would have required more fencing to exclude this land than to enclose it with appellant's four hundred acres. About sixty-five rods of this fencing (about five hundred rods in all) is on this land,—less than one-eighth,—and is there yet. So, also, the ditching that drained appellant's land drained the land in controversy. While it is true that some of the ditching which drained this land was north and some south of it, yet from the whole testimony the ditch north was necessary to get the water so that it would not overflow this land in controversy, and that to the south was necessary to carry it away. It took the entire ditch to drain the entire land. The master in chancery found that the cost of ditching and

fencing the four hundred acres, including the land in controversy, was $2200, and should be shared *pro rata* by all the land, and on this basis appellant was allowed $315.75. Carefully going over all the testimony on the subject, we cannot say that he was wrong.

The master in chancery based his conclusions as to rents on the principle that the value of the rent, which was corn, only, delivered in crib on the premises, was its market value at the time it was so delivered in crib. This is the correct rule. When the landlord has received his rent, it is his. If he holds the rent corn and it advances in price, the gain is his ; if it drops, the loss is his. The price allowed appellant was what the tenants got for their corn at the time the rent was delivered, and presumably appellant could at that time have obtained the same price.

Finding no material error in the decree the same is affirmed.

*Decree affirmed.*