Kirchner v. Miller.

LORENZ KIRCHNER

v.

LE GRAND MILLER.

The complainant and defendant were the owners of adjoining town lots. The complainant employed a surveyor to fix the dividing line between the lots, which the surveyor, by mistake, mislocated, and thereupon complainant, supposing that he was building upon his own land, inadvertently placed a small part of his house a few inches over on defendant's lot, the defendant being also then unaware of the encroachment.—*Held*, that equity would not enjoin an action of ejectment by defendant against complainant to recover possession of the strip so built upon.

Bill for relief. On final hearing on pleadings and proofs.

NOTE.—Under what circumstances an owner of land has been adjudged to be estopped by his silence or acquiescence, through ignorance or forgetfulness or mistake, in an adjoining land-owner's building over on his premises, is elaborately discussed in *Duchess of Kingston's Case, 2 Smith's Lead. Cas. (8th Am. ed.) 888, et seq.; Bigelow on Estoppel 523;* see, also, *Short* v. *Taylor, 2 Eq. Cas. Abr. 522; East India Co.* v. *Vincent, 2 Atk. 83; Slim* v. *Croucher, 1 De G., F. & J. 518; Mold* v. *Wheatcroft, 27 Beav. 510; Rex* v. *Butterton, 6 T. R. 554, 556; Tarrant* v. *Terry, 1 Bay 239; Brant* v. *Virginia Coal and Iron Co., 93 U. S. 326; Cronin* v. *Gore, 38 Mich. 381; Sulphine* v. *Dunbar, 55 Miss. 255; Weber* v. *Weatherby, 34 Md. 656; Hall* v. *Fisher, 9 Barb. 17, 31; Lawrence* v. *Luhr, 65 Pa. St. 236; Viele* v. *Judson, 82 N. Y. 32; Raynor* v. *Timerson, 54 N. Y. 639; Miller* v. *Platt, 5 Duer 272* (an important case); *Tilton* v. *Nelson, 27 Barb. 594, 608; Christianson* v. *Linford, 3 Robt. (N. Y.) 215, 19 Abb. Pr. 221; McAfferty* v. *Conover, 7 Ohio St. 99; Robinson* v. *Justice, 2 Pa. 18; Woods* v. *Wilson, 37 Pa. St. 379; Gove* v. *White, 23 Wis. 282; Jordan* v. *Deaton, 23 Ark. 704; Godeffroy* v. *Caldwell, 2 Cal. 489; Ferris* v. *Coover, 10 Cal. 589,*

Kirchner *v.* Miller.

*Mr. S. C. Mount,* for complainant.

*Mr. A. S. Cloke,* for defendant.

.  THE CHANCELLOR.

The parties to this suit are the owners of adjoining lots of land in that part of Jersey City known as Greenville. The lots are each of the dimensions of twenty-five feet front. The complainant, desiring to build an extension to the house on his lot, and wishing to build up to, or nearly up to, the line between his lot and the defendant's, employed a competent surveyor to locate the line. The surveyor located it accordingly, driving stakes to show where it was. One of these was at the front. The complainant built the extension nearly up to the line. About a year after it was finished, it was discovered that it occupied a small piece, four or five inches wide, by fifteen feet deep, of the defendant's lot. The surveyor had made a mistake in fixing the line, and had located it six and a half inches too far west, and to that extent on the defendant's land. The defendant brought an action of ejectment in the Supreme Court to recover possession of that strip, and the bill in this cause was filed for an injunction to restrain him from prosecuting that suit and for other equitable relief. The fact that the complainant was very care-

*631; Crest* v. *Jack, 3 Watts 238; Hefner* v. *Downing, 57 Tex. 576; Walker* v. *Flint, 3 McCrary 507; Georgia R. R.* v. *Hamilton, 59 Ga. 171; Steele* v. *Smelting Co., 106 U. S. 447; Odlin* v. *Gore, 41 N. H. 465; 12 Cent. L. J. 29.*

In *Proctor* v. *Putnam Machine Co.* (*Mass.*), *18 Rep. 51,* defendant's agents told plaintiff that defendant proposed to build a heavy wall on its own land, and at its own expense, and requested the plaintiff to unite with them in ascertaining the true boundary line between their lots; plaintiff replied that a surveyor had once surveyed the land, and could, therefore, fix this line, but that he was absent from home; plaintiff finally agreed that that surveyor's assistant should make use of the surveyor's notes, and that the wall should be built on the line so fixed by the assistant. The wall was built, and it was afterwards found to be wholly on plaintiff's land.—*Held,* that plaintiff was not estopped from recovering the land covered by the wall, if he had acted without fraudulent intent in regard to the true line between the parties, although under a mistake of fact.

In *Acton* v. *Dooley, 6 Mo. App. 323, 74 Mo. 63,* plaintiff and defendant be-

Kirchner v. Miller.

ful and circumspect in locating the line before beginning to build the extension, is clearly proved, and indeed is not denied. · Nor is it denied that the defendant knew, while the extension was being built, that the complainant was building his extension there. The answer says that he believed, at the time of the erection of the extension, that it was upon the true line dividing the two lots, and that he had no suspicion whatever that the complainant was encroaching upon his lot; and it admits that, as charged in the bill, he did not object to the erection of the building. It alleges that the complainant can remove that part of the building which is on the defendant's lot for $75. The complainant, after he discovered that the building encroached on the defendant's lot, offered in settlement to buy the strip or give the defendant a strip of equal width from the lot adjoining on the other side. Both these offers were declined. The defendant, however, offered to settle the matter by selling his whole property to the complainant for $2,200, or by leasing the strip to him at the rent of $60 a year. The strip was probably worth not over $50. The defendant admits that the loss of that strip from the lot would be no injury to his house, but he says it would reduce the value of the lot $150. The lot, without the building on it, is not worth over $500 or $600. The fact of the encroachment was not discovered until the parties got into a con-

came the owners of adjoining twenty-five-foot lots; the former in 1865, the latter in 1866. Defendant soon afterwards, desiring to build, had his lot surveyed, but plaintiff was not notified of, and took no part in the survey, which, by mistake, included a strip four and one-half inches wide, and one hundred and fifty-five feet deep. Defendant built his house on the surveyed line, and also a fence thereon in the rear of his house. Plaintiff afterwards measured twenty-five feet from the western line (the division line) of this survey, and located the western line of his own lot therefrom. He built a house on this western line of his lot, and it was completed before defendant's house. Defendant had no knowledge of the mode by which plaintiff had located the west line of his lot, nor that plaintiff had built on that line. Plaintiff, by permission, used defendant's west fence as part of his coal-shed. Some time afterwards he complained that defendant's cornice projected over his lot, and it was thereupon removed. In 1875 a new survey was made, and plaintiff then first discovered defendant's encroachment.—*Held*, that plaintiff was not estopped from recovering the strip in ejectment.—REP.

troversy about the true location of a fence subsequently built
by the·defendant on the rear of the lot.

The complainant's counsel insists that the principle of the
decision in *McKelway* v. *Armour, 2 Stock. 115*, is applicable to
this case. There, McKelway had by mistake built on Armour's
lot instead of his own, which adjoined it. Armour supposed
McKelway was building on his own property, and did not sus-
pect that he was, in fact, building on his. It was held that
McKelway was entitled to relief, and that Armour must buy
the improvements at a valuation to be fixed by this court, or
convey his lot to McKelway at a valuation to be fixed in like
manner, or upon receiving a conveyance of another adjoining lot
of the same size, and in fact, more valuable than his. In that
case the improvements were a valuable dwelling-house, and
McKelway would, if the court had refused relief, have been
subjected to a large loss.

Although in that case Armour saw McKelway building on
his land, he did not know or suspect that the building was being·
erected on his land, but supposed it was being built on McKel-
way's land. The decision seems to have been based on the
ground of mutual mistake. The court, in fact, compelled Ar-
mour, who was in nowise in the wrong, to sell his property to
McKelway at a price to be fixed by the court, or to exchange
properties with McKelway, or to pay for the improvements
which McKelway had put on his, Armour's, lot, although they
had been so put on that lot, not only without Armour's knowl-
edge, but without any suspicion on his part that McKelway was
putting them on his, Armour's, property. The principle of the·
case is that where one by mistake puts improvements on another's
land, mistaking it for his own, equity will, in a proper case, com-
pel the latter to sell and convey the land to the former, at a price
to be fixed by the court, unless he will consent to pay for the·
improvements. The exercise of such a judicial power, unless
based upon some actual or implied culpability on the part of the
party subjected to it, is a violation of constitutional right. No·
tribunal has the power to take private property for private use.
The legislature itself cannot do it.

In *McKelway* v. *Armour*, the defendant was, by judicial compulsion, forced to sell his land to the complainant merely because the latter had, by his own mistake, put valuable improvements upon it, supposing it to be his own. The alternative given to the defendant—the terms on which alone he was allowed to hold his own property—was to pay for those improvements. Sir William Grant, M. R., says in *Pilling* v. *Armitage, 12 Ves. 78, 84:* "There are different positions in the books with regard to the sort of equity arising from laying out money upon another's estate through inadvertence or mistake; that person seeing that, and not interfering to put the party upon his guard. The case, with reference to which that proposition is ordinarily stated, is that of building upon another man's ground. That is a case which supposes a total absence of title on the one side; implying, therefore, that the act must be done of necessity under the influence of mistake; and undoubtedly it may be expected that the party should advise the other that he is acting under a mistake." And on this subject Judge Story says in *Bright* v. *Boyd, 1 Story C. C. 478, 493,* quoting the above with approval, that the duty of compensation in such cases, at least to the extent of the permanent increase of value, is founded upon the constructive fraud, or gross negligence or delusive confidence held out by the owner; and he holds that the maxim *Qui tacet, consentire videtur ; qui potest et debet vetare, jubet si non vetat,* is applicable. "In order to justify the application of the principle," says Mr. Kerr, "it is indispensable that the party standing by should be fully apprised of his rights, and should, by his conduct, encourage the other party to alter his condition, and that the latter should act on the faith of the encouragement so held out." *Kerr on F. & M. 132.* "It will be observed," said Lord Cranworth, in *Ramsden* v. *Dyson, L. R. (1 H. of L.) 129, 141,* "that to raise such an equity two things are required, first, that the person expending the money supposes himself to be building on his own land; and secondly, that the real owner, at the time of the expenditure, knows that the land belongs to him and not to the person expending the money in the belief that he is the owner." To the same effect are remarks of Lord Wensleydale, in the same case.

To warrant the interference of equity in favor and upon the application of the person who has expended his money upon another's land, there must obviously be some hardship against which he ought in conscience to be protected; as that through his mistake he has expended money upon another's land, of which that other ought not, under the circumstances, to have the benefit. Where there is no hardship there is no ground for inter-ference. This case is not one for the application of the doctrine. In *McKelway* v. *Armour*, the complainant had built a valuable dwelling-house upon the defendant's land, which he must lose unless the court granted him relief. Here there is no hardship to justify a call upon equity for relief. If the defendant be not restrained from proceeding with his action of ejectment, the com-plainant must remove from the defendant's land the part of his building (a wooden one) which is thereon, viz., a piece of about five inches wide by fifteen feet long. The building does not occupy the whole width of the strip. The complainant says he built up to within an inch and a half or two inches of the line. The extension is between twelve and thirteen feet wide, and is two stories high. The cost of removing the part which is on the defendant's land, and closing up the side again, would not exceed $100. The complainant's claim is that inasmuch as he, misled by the mistake of the surveyor, honestly but mistakenly assumed that he was the owner of a strip of land which in fact belonged to the defendant, and consequently built a part of his house on it, he is, on that state of facts alone, although the de-fendant neither did nor said anything to confirm him in his mis-take, and in fact did not know that there was a mistake, entitled in equity to a decree that the defendant convey the land to him at a price to be fixed by the court, or accept land on the other side of his lot in exchange for it. To state the claim is to dem-onstrate its untenable character.

It is true the complainant's wife testifies that a short time after the survey was made, she showed the stakes to the defendant, saying, "See what a piece of your ground we take!" But she says she did not suppose that the stake was over the true line, or that they were encroaching upon the defendant's land. It is

admitted that none of the parties knew or suspected that the survey was incorrect. The complainant claimed the land up to the line given him by the surveyor, and the defendant, having no knowledge or suspicion that the claim was not correct, did not gainsay it. It is very important that in applying the principle above considered, care should be taken that the rights of property be not infringed upon without adequate reason to justify it. The bill will be dismissed, with costs.