## PEARL TOWNSHIP v. THORP *et al.*

Where a stake driven by a township engineer on land belonging to the township, for the purpose of indicating where a well should be driven by the township, was wrongfully removed by an unknown party and placed on the land of an individual, and after the well had been sunk there the latter sold the land, neither he nor the purchaser believing the well to be on the description sold, a decree in a suit by the township, providing that the purchaser reimburse the township for the well, or convey to it for a consideration the ground on which the well was situated, was proper.

(Opinion filed July 22, 1903.)

Appeal from circuit court, Sully county. Hon. LORING E. GAFFY, Judge.

Suit by Pearl township, of Sully county, against Andrew R. Thorp and another. From a decree in favor of complainant, defendants appeal. Affirmed.

*Chas. E. DeLand* and *John F. Hughes*, for appellants.

*Horner & Stewart*, for respondent.

FULLER, J. The object of this action is to obtain relief in equity from the consequences of a mutual mistake by which an artesian well, costing the plaintiff township about $2,300, was put down on land supposably its own, but in fact belonging to the defendant Nelson, who immediately thereafter sold and transferred the same to his codefendant Thorp. The action was dismissed as to Nelson, and, by the judgment appealed from, Thorp is required to reimburse the township for the well, or convey to it, for a valuable consideration and within a reasonable time, one-half acre of ground upon which the same is situated.

Careful attention has been given to each alleged error of

law occurring at the trial and argued in appellants' brief, but nothing appears to justify a reversal, unless it should be found from the controlling facts, which stand proved by competent testimony, that respondent is not entitled to the relief granted.

The questions raised concerning the admission and rejection of testimony possess no merit, and to discuss each separately would greatly lengthen this opinion, without serving a useful purpose.

By proceedings first had in substantial compliance with the statute, the well in question was regularly located within the boundaries of the respondent township, on a piece of land containing two acres purchased on the 3d day of November, 1900, from the defendant Nelson for that purpose, and described as follows: "Beginning at a point eighty rods north of the southeast corner of the southeast quarter of section 3, township 115, north of range 79, west of the fifth principal meridian, thence north sixteen rods, thence west twenty rods, thence south sixteen rods and thence east twenty rods to the place of beginning." The acting state engineer of irrigation, assisted by the proper township officials, located the well in controversy on the ground above described, 89 rods north of the south line, and 19 rods west of the east line, of said southeast quarter of section three (3) in township one hundred and fifteen (115), north of range seventy-nine (79), west of the fifth principal meridian, and at the same time drove a substantial stake at that point to indicate exactly where the well was to be sunk and completed by the drillers having the contract. Thereafter some unknown person wrongfully, and without the knowledge or consent of any of the officials authorized to act for the township, removed this stake,

17 S. D.—17

and placed it upon such quarter section owned by Nel son, at a point 2 rods, 4 feet, and 6 inches west of its original location, and 19 feet west of the west line of the two-acre tract which had been segregated therefrom by purchase and for the purposes of the artestan well. At the time the well machinery was brought upon the ground and placed in position, immediately over the spot where the stake was found, appellant Thorp was present, and during the progress of the work was a frequent visitor there, until the flow of water was struck, and was present upon that occasion. Immediately after the completion of the well, and for the sum of $600, he purchased of Andrew Nelson the unimproved quarter section above described, with the exception of the two acre tract previously deeded to the respondent township for artesian well purposes. As soon as respondent's officials ascertained that the well in controversy was not upon the 2-acre tract, but upon the 158-acre tract purchased by Thorp from Nelson, they made every reasonable effort to purchase the one-half acre of land upon which the well is situated, and which joins such 2-acre tract on the west, but Thorp declined all negotiations, and said, "We have got the well; we have got a good thing and we propose to keep it."

According to their own testimony, neither Thorp nor Nelson, at the time the 158 acre tract was purchased, knew that the well was located thereon, but supposed it to be on the 2-acre tract owned by the township. Confessedly, all parties interested were mistaken in the supposition that the well was situated on respondent's property at the place where the stake was placed by its officials and the engineer of irrigation. On this unimproved prairie, the contour of the surface furnishes

no special distinguishing features or land marks, other than the government mounds, and the failure to discover, before the well was put down, that the position of the stake had been changed, is not attributable to the negligence of the township officials.

As tersely stated by respondent's attorneys: "The case presents the naked proposition of whether the plaintiff and respondent, a public corporation, having admittedly expended a large sum of money in the digging and constructing of an artesian well upon land of another, under a mistake engendered and caused by the wrongful removal of a location stake which it had placed upon land of its own to mark the location of the well has any remedy or any rights, and whether the defendant and appellant Thorp, having admittedly never expended a dollar in the construction of the well, and having stood by and seen the well dug and constructed upon this land, and knowing that it was intended to place the well upon land owned by the township and not upon land owned by another, is to be permitted to absorb absolutely the fruits of the township's labor and expenditure of money, is to be allowed to reap where he has not sown, to profit where he has not toiled."

It is manifestly repugnant to our system of jurisprudence, matured by the wisdom of ages, to grant appellant exclusive dominion over this well, dedicated for all time to the use of the people, and for which the tax-payers of the township burdened themselves with indebtedness. If equity suffers no wrong without a remedy, a private person, by reason of a fraud not traceable to its perpetrator, cannot prevent natural justice by retaining such public property without any compensation.

The case of McKelway v. Armour, 10 N. J. Eq. 115, 64 Am. Dec. 445, presents a state of facts which appeal with less ardor to the conscience of the chancellor, and upon which relief was granted similiar to that provided for in the decree before us. In that instance there was no fraud, and the plain-tiff never attempted to ascertain the location of his lot by act-ual measurements until after his house was completed upon a lot owned by the defendant. Moreover, the contention was between private persons, involving no necessary public demand, such as an ample supply of water satisfies, and the house, unlike the well, might have been moved.

The facts upon which the defendant was given the alter-native of taking the improvements by paying their value, or deed his lot for a price to be ascertained by a referee, are stated as follows: "The complainant relies upon circumstances, but they are susceptible of an interpretation quite as consis-tent with another hypothesis. But it is proved, beyond all doubt, that the complainant erected his improvements on this lot by mistake; he supposed that it was the lot next that belonged to Armour. Armour labored under the same mistake. He lived in the vicinity. He saw the complainant progressing, from day to day, with these improvements. If he knew this to be his lot, his silence was a fraud upon the complainant; but this is not pretended. He admits that he did not suspect the erections to be upon his lot until some time after their erection, when by actual measurement, to his surprise, he discovered the mistake. Under such circumstances, it would be most un-just to permit Armour to take these improvements, and to send the complainant away remediless. It is very true, as was urged upon the argument, the complainant is the most to

blame in this matter. A diligent examination of the deed to Armour, and an actual measurement of the land, would have decided the difficulty. But it was a vacant lot of land, plotted out upon a map only, and the mistake was one which might occur to the most careful and diligent man. The fact of Armour's standing by, and participating in the mistake, is an important feature In the case. In adjusting the equities of the parties, a decree should be made, which, while it relieves the complainant, must put Armour to as little inconvenience as possible."

If their testimony is true, Thorp did not undertake to buy, nor Nelson to sell, premises containing the artesian well which the former is now given the option to purchase for his exclusive benefit, or freely partake of its advantages in common with his neighbors, as the statute contemplates. Surely justice has been done, and the judgment appealed from is affirmed.