# CHARLESTON

SHEARS v. THE TRADERS BUILDING ASSOCIATION *et al.*

Submitted January 11, 1906.    Decided February 6, 1906.

1.  MORTGAGES—*Foreclosure—Separate Sales.*
    Where one executes to the same trustees two deeds of trust, at different times, conveying separate lots of land, to secure to the same person two distinct debts, and where default is made in the payment of the debts, and the trustees are required to make sale of the property, they should sell the same separately, and not jointly, and to sell it collectively will be an irregularity for which the sale, and deed made pursuant thereto, will be set aside, upon proper bill filed for that purpose.    (p. 667.)

2.  SAME—*Irregularities—Notice to Purchaser.*
    A purchaser at such sale is charged with notice of the irregularity.    He is bound to know the powers of the trustees, and to see

that the sale is made in conformity with the instrument creating the trust, and as required by law. (p. 669.)

3.  Same—*Waiver of Objections.*
    The grantors will not be estopped to set such sale aside, because one of them was present at the sale and did not call attention to the irregularity and object to the sale. (p. 668.)

Appeal from Circuit Court, Wood County.

Bill by B. F. Shears and Hattie Shears against the Traders Building Association and others. Decree for defendants, and plaintiffs appeal.

*Reversed.*

J. W. Vandervort, for appellants.

W. N. Miller and Caldwell & Watson, for appellees.

Sanders, Judge :

The appellants, B. F. and Hattie Shears, on the 26th day of April, 1901, executed to the defendants, H. H. Moss and A. K. Leonard, trustees, a trust deed on two lots in Tygart district, Wood county, to secure to the defendant, The Traders Building Association, the sum of $1,100.00. On the 7th day of June, 1901, the same parties conveyed to the same trustees two lots in Jeannette Tavenner's addition to Tavennersville, in said county, to secure to said association the payment of the sum of $600.00. Default having been made in the payment of the sums secured, the trustees, on June 18, 1904, sold the properties conveyed, and defendant S. P. Moore became the purchaser thereof, at the price of $1,700, and afterwards obtained a deed. On July 11, 1904, the plaintiffs filed their bill to set said sale and deed aside. Pending the suit, an injunction was awarded by the judge of the circuit court, in vacation, restraining Moore from prosecuting an action of unlawful entry and detainer to recover possession of the property from Shears. At the final hearing, the court refused to grant the relief prayed for, dissolved the injunction, and dismissed the bill.

The appellants present several reasons for reversal, but it is only necessary to notice the one which we regard as fatal to the decree, and which plainly calls for setting the sale aside and cancelling the deed. The trustees, Moss and Leonard, in proceeding to make sale, advertised the properties jointly, or collectively—that is, they advertised

the entire property jointly, by one notice, and on the day of sale the property was lumped, or sold collectively, and purchased by said Moore. These deeds of trust are specific liens upon the property separately conveyed by them, to secure the amount of indebtedness therein named, respectively, and upon a sale of the property conveyed by one deed of trust, if it should bring more than sufficient to pay off the lien, it would not be proper to credit the surplus upon the loan secured by the other deed of trust, if, upon a sale of the property conveyed by that deed, it should not sell for enough to satisfy the indebtedness. The property should be so sold as to be able to determine, with certainty, the amount, realized from the property conveyed by each trust deed. Who can say but what the property conveyed by one of the deeds sold for more than sufficient to pay the debt secured by it? To sell the property collectively, it would be impossible to know the proportionate amount each piece of property brought, and, therefore, it could not be determined how much should be credited upon each loan. The *cestui que trust* has no right, under the trust deed, if the property conveyed by one deed should sell for more than sufficient to pay off the debt which it was given to secure, to have the surplus applied to the satisfaction of the debt secured by the other deed of trust in the event that the property conveyed thereby should prove inadequate for the purpose.

It is urged that the property was offered separately, and that the trustees failed to receive a bid sufficient to pay the association's debt, and, therefore, it was sold collectively. This cannot be offered as an excuse for selling the property collectively, because, by the terms of the deeds, no such right existed. The trustees were not authorized to sell, except in conformity with the contract creating the trust, and the property conveyed by each deed was only liable to be sold in satisfaction of the indebtedness thereby secured.

It is contended by the defendants that the answer of the building association shows that the properties were first offered separately, and that they were then offered together, and that a larger price being thus obtained, the plaintiffs were not prejudiced, but benefited, by the joint sale of the property, and that the plaintiffs, having failed to set up in the bill this matter of joint sale, or make any issue in the pleadings in

regard thereto, cannot now make a new or different case on this hearing. It is true the plaintiffs, in the conclusion of their bill, assign six grounds why the sales should be set aside, and in these assignments it is not complained that the properties were jointly sold; but while this is so, it is shown by the bill that the two deeds of trust were given upon separate pieces of property to secure different debts, and that the property was jointly sold. This being so, the Court will look to the whole bill to see if the plaintiffs are entitled to relief, and the fact that the bill contains allegations attempting to specifically point out irregularities, will not prevent the plaintiffs from relying upon the other allegations in the bill which show irregularities. This being the allegation of the bill, it is not denied by the answer, but, on the other hand, is admitted.

It is argued that it is shown that the property brought more when offered jointly than it did when offered separately, and, therefore, the plaintiffs are not prejudiced. How much from the proceeds of sale will be credited on the $1,100 loan, and how much on the $600 loan? How much did the property conveyed by the trust deed dated June 7, 1901, bring, and how much did the property conveyed by the second deed of trust, bring? It nowhere appears. The property upon which the small loan was made, may have brought a sum much more than sufficient to discharge the lien against it, and if this be so, as we have observed, the surplus arising from the sale of the property which sold for more than sufficient to pay off the lien against it, could not be applied to discharge the lien against the property which did not sell for enough to do so.

It is claimed by the defendants that the silence, and conduct of B. F. Shears at the time of the sale, should estop him. It is true that Shears was present when the sale was made, but he had no control over the proceedings. The manner of advertising and selling was fixed by the trust deeds, and the sale was being conducted entirely by the trustees. Shears had no voice in it, and the fact that he was present, and did not object to the sale being made in the manner in which it was made, cannot, in any way, estop him to say now that the trustees did not proceed in conformity with the provisions of the trust deeds. The grantor misled no

one by his conduct. All that can be charged to him is, that he was present, and was silent; that he did not then say that the trustees had no power to make the sale as they were proceeding to do. A purchaser of property sold by a trustee under a deed of trust given to secure a debt, and authorizing the trustee, after advertising in a certain manner, to make sale of the property to satisfy the debt secured thereby, is charged with notice of the powers of the trustee, and it is the purchaser's duty to inquire and determine for himself if the sale is being made in conformity with the provisions of the instrument creating the trust. The irregularity here complained of is such, as from its very nature, immediately presents itself to view. "Silence will not estop unless there is not only a right but a duty to speak." *Cantley* v. *Morgan*, 51 W. Va. 304; *Williamson* v. *Jones*, 43 W. Va. 562; *Dawson* v. *Grow*, 29 W. Va. 333; *Pocahontas Light and Water Co.* v. *Browning*, 53 W. Va. 436.

For the reasons given, we reverse the decree of the circuit court, set aside the sale and cancel and annul the deed made thereunder, and award to the plaintiffs their costs, both in this Court and in the court below.

*Reversed.*