W. J. SOMERVILLE, *et. al.*

*v.*

WILLIAM L. JACOBS, *et al. and* FARMERS BUILDING AND
LOAN ASSOCIATION, *a Corporation, Intervenor.*

(No. 12770)

Submitted May 6, 1969.          Decided July 1, 1969.

Dissenting Opinion July 22, 1969.

Rehearing Denied December 2, 1969.

*Richard F. Pence,* for appellants.

*Wilson & Hill, George W. Hill, Jr., Burk & Bayley,
Robert W. Burk, McDougle, Davis & Morris, Fred L.
Davis,* for appellees.

HAYMOND, PRESIDENT:

The plaintiffs, W. J. Somerville and Hazel M. Somerville, herein sometimes referred to as the plaintiffs, the

owners of Lots 44, 45 and 46 in the Homeland Addition to the city of Parkersburg, in Wood County, believing that they were erecting a warehouse building on Lot 46 which they owned, mistakenly constructed the building on Lot 47 owned by the defendants, William L. Jacobs and Marjorie S. Jacobs, herein sometimes referred to as the defendants. Construction of the building was completed in January 1967 and by deed dated January 14, 1967 the Somervilles conveyed Lots 44, 45 and 46 to the plaintiffs Fred C. Engle and Jimmy C. Pappas who subsequently leased the building to the Parkersburg Coca-Cola Bottling Company, a corporation. Soon after the building was completed but not until then, the defendants learned that the building was on their property and claimed ownership of the building and its fixtures on the theory of annexation. The plaintiffs then instituted this proceeding for equitable relief in the Circuit Court of Wood County and in their complaint prayed, among other things, for judgment in favor of the Somervilles for $20,500.00 as the value of the improvements made on Lot 47, or, in the alternative, that the defendants be ordered to convey their interest in Lot 47 to the Somervilles for a fair consideration. The Farmers Building and Loan Association, a corporation, the holder of a deed of trust lien upon the land of the defendants, was on motion permitted to intervene and be made a defendant in this proceeding.

The circuit court considered the matter upon motions of the defendants for judgment in their favor; the separate answers and the counterclaims of the defendants; the interrogatories and the answers to the interrogatories; the depositions of the defendants; an agreed statement of the facts by all parties; and the respective motions of the plaintiffs, the Somervilles, and the defendants for summary judgment.

By final judgment rendered June 11, 1968, the circuit court required the defendants within 60 days to elect whether they would (1) retain the building and pay W. J. Somerville $17,500.00 or suffer judgment against

themselves in his favor in that amount, or (2) convey title to Lot 47 of Homeland Addition to W. J. Somerville for the sum of $2,000.00 cash. From that judgment this Court granted an appeal and supersedeas upon application of the defendants on October 17, 1968.

This case was submitted for decision upon the record of proceedings in the trial court and the briefs and the oral arguments in behalf of the defendants. The brief in behalf of the plaintiffs, not having been filed within the time required by the provisions of Rule VI of this Court and the defendants having refused to waive the requirement of the rule, oral argument in behalf of the plaintiffs was not permitted upon the submission of the case.

As previously indicated the material facts, which are not disputed, were stipulated and set forth in the agreed statement of the attorneys representing the parties, and the questions presented for decision are questions of law.

The stipulation concerning the facts is in·this form:

"1. The plaintiffs, W. J. Somerville and Hazel M. Somerville, in mistaken reliance upon a surveyor's report and plat, constructed the building described in the complaint upon Lot No. 47 of Homeland Addition to the City of Parkersburg, in Wood County, West Virginia, believing that they were constructing the building upon Lot No. 46 of said addition.

"2. Lot No. 47 was and still is owned by the defendants as joint tenants with the right of survivorship, title to said Lot No. 47 having been acquired by William L. Jacobs and Marjorie S. Jacobs by Deed dated February 21, 1966, and duly admitted to record in the Office of the County Clerk of Wood County, West Virginia, on March 14, 1966, as appears of record in Deed Book 513 at Page 317.

"3. The defendants were not aware of the fact that said building had been constructed on their property until after the completion of said building by the plaintiff, W. J. Somerville, its purchase by the plaintiffs, Fred C. Engle and Jimmy C.

Pappas, and its occupancy as a tenant by the plaintiff corporation, Parkersburg Coca-Cola Bottling Company.

"4. The fair market value of said Lot No. 47 immediately prior to the erection of said building was $2,000.00.

"5. The fair market value of said Lot No. 47 immediately subsequent to and by reason of the erection of said building was $19,500.00.

"6. By deed dated January 14, 1967, the plaintiffs, W. J. Somerville and Hazel M. Somerville, who are husband and wife, conveyed to the plaintiffs, Fred C. Engle and Jimmy C. Pappas, Lots 44, 45 and 46 of said Homeland Addition under the mistaken belief that the warehouse building described in the complaint was situate on Lot 46, for a total purchase price of $19,500.00, and the plaintiffs Engle and Pappas paid the plaintiffs, W. J. Somerville and Hazel M. Somerville the said sum of $19,500.00 under the mistaken belief that said warehouse was situate on said Lot 46.

"7. The plaintiffs, Fred C. Engle and Jimmy C. Pappas, leased the said warehouse building to the plaintiff, Parkersburg Coca-Cola Bottling Company beginning as of January 1, 1967, and continuing up until the time of the filing of this action for a monthly rental of $250.00, that being the fair rental value of said warehouse building.

"8. Since the filing of the above styled action, the plaintiff, W. J. Somerville, has constructed on said Lot 46 a warehouse building identical with the one previously constructed by him on said Lot 47 and the plaintiff, Parkersburg Coca-Cola Bottling Company is now occupying said building as a tenant and paying to the plaintiffs, Fred C. Engle and Jimmy C. Pappas the sum of $250.00 as a monthly rental on said premises pursuant to the terms of the lease to which reference is hereinabove made."

The controlling question for decision is whether a court of equity can award compensation to an improver for improvements which he has placed upon land not owned by him, which, because of mistake, he had reason to

believe he owned, which improvements were not known to the owner until after their completion and were not induced or permitted by such owner, who is not guilty of any fraud or inequitable conduct, and require the owner to pay the fair value of such improvements or, in the alternative, to convey the land so improved to the improver upon his payment to the owner of the fair value of the land less the value of the improvements.

Though there are numerous decisions by this Court relating to improvements to land, the precise question here involved is one of first impression in this jurisdiction. The statute dealing with allowance for improvements to real estate, Article 5, Chapter 55, Code, 1931, provides for allowance for improvements only to a defendant against whom a decree or judgment shall be rendered for land where no assessment of damages has been made and permits such defendant, at any time before the execution of a decree or judgment, to present a petition to the Court rendering such decree or judgment praying that he may be allowed the fair and reasonable value of such improvements. That statute has no application to the facts of this case, and this case, for that reason, is not within the statute. *Green* v. *Mullins,* 146 W. Va. 958, 124 S. E.2d 244.

Though the precise question here involved has not been considered and determined in any prior decision of this Court, the question has been considered by appellate courts in other jurisdictions and though the cases are conflicting the decisions in some jurisdictions, upon particular facts, recognize and sustain the jurisdiction of a court of equity to award compensation to the improver to prevent unjust enrichment to the owner and in the alternative to require the owner to convey the land to the improver upon his payment to the owner of the fair value of the land less the improvements.

In the early case of *Bright* v. *Boyd,* 1 Story 478, 4 F. Cas. 127, (No. 1875) and 2 Story 605, 4 F. Cas. 134, (No. 1876), a Federal trial court held in an opinion by Justice Story

that an improving occupant could institute and maintain a suit in equity to secure compensation for his improvements on land of the owner and that as a doctrine of equity an innocent purchaser for valuable consideration, without notice of any infirmity in his title, who by his improvements added to the permanent value of the owner is entitled to compensation for the value of the improvements and to a lien upon the land which its owner must discharge before he can be restored to his original rights in the land.

In the early Kentucky case of *Thomas* v. *Thomas' Executor*, 55 Ky. (16 B. Mon.) 420, the court recognized the equitable principle that one who acquires title to land bona fide, and enters upon and improves it, supposing it to be his own, is entitled to compensation for improvements.

In the leading case of *The Union Hall Association* v. *Morrison*, 39 Md. 281, a plaintiff who claimed title to a small lot, entered by mistake into possession of other land in the neighborhood of such lot and erected on such land a valuable building and who, after having been ousted from the possession of the land in an action by its owner, instituted a suit in equity for compensation for the improvements. In that case the court held that although there was nothing in the conduct of the defendant owner which created an equitable estoppel as he had been ignorant of his rights, the plaintiff, whose good faith was beyond question, had an equitable right to compensation for the improvements; that the defendant should have the option of accepting from the plaintiff payment for the lot for its value without the improvements and conveying the lot to the plaintiff, or of holding the lot with the improvements upon payment to the plaintiff their actual value to the extent that they enhanced the value of his lot, and that the plaintiff was entitled to a lien for the value of the improvements and, upon default in the payment for such improvements, the property should be sold to enforce such payment. In discussing the relief to which the plaintiff was entitled the opinion contains this

language: "With respect to the nature and terms of the decree it will be proper that the appellee shall have the option to accept from the appellant payment for the lot of ground, estimated at its just value, without the improvements thereon, and be required on the payment thereof with interest, to convey the same to the appellant, by a sufficient deed. Or at his election to take and hold the lot with improvements, paying to the appellant the actual value of the improvements, to the extent of the additional value which they have conferred upon the land, and in default of such payment, the same ought to be declared to be a lien, and charge on the property, and the lot and improvements should be decreed to be sold for the payment thereof."

In the earlier case of *McKelway* v. *Armour,* 10 N. J. Eq. (2 Stock.) 115, 64 Am. Dec. 445, cited and discussed in *The Union Hall Association* case, the plaintiff by mistake built a valuable dwelling-house upon the defendant's adjoining lot instead of his own. Though the defendant saw the plaintiff building on his land, he did not know or suspect that the building was being erected on his land but thought it was being erected on the land of the plaintiff. The Court of Chancery of New Jersey held that the plaintiff was entitled to relief and required the defendant, within twenty days, to pay for the improvements at a valuation to be fixed by the court, or to convey the lot to the plaintiff at a valuation to be fixed by the court. Though the *McKelway* case is discussed and criticized in the later case of *Kirchner* v. *Miller,* 39 N. J. Eq. 355, and in the decision of this Court in *Cautley* v. *Morgan,* 51 W. Va. 304, 41 S. E. 201, discussed later in this opinion, the *McKelway* case was not "substantially overruled" by the *Kirchner* case, as mistakenly stated in the opinion in the *Cantley* case. Instead, the *McKelway* case was distinguished from the *Kirchner* case by this language in the *Kirchner* case: "To warrant the interference of equity in favor and upon the application of the person who has expended his money upon another's land, there must obviously be some hardship against which he

ought in conscience to be protected; as that through his mistake he has expended money upon another's land, of which that other ought not, under the circumstances, to have the benefit. Where there is no hardship there is no ground for interference. This case is not one for the application of the doctrine. In *McKelway* v. *Armour,* the complainant had built a valuable dwelling-house upon the defendant's land, which he must lose unless the court granted him relief. Here there is no hardship to justify a call upon equity for relief."

In the *McKelway* case the complainant and the defendant were owners of adjoining town lots. The complainant employed a surveyor to fix the dividing line between the lots, which the surveyor, by mistake, mislocated. The complainant supposing that he was building upon his own land, inadvertently placed a small part of his house a few inches on the lot of the defendant who at the time was unaware of the encroachment. In the *Kirchner* case the court said that the complainant could remove part of his building from defendant's lot at a cost of $75.00, that the complainant, after he discovered the encroachment, offered to buy the strip of land or to give the defendant a strip of equal width from his adjoining lot on the other side but the defendant rejected the two offers and instead offered to settle the matter by selling his entire property to the complainant for $2200.00 or by leasing the occupied strip of land, which was worth $50.00, at a rental of $60.00 per year. The relief sought by the complainant was an injunction to enjoin the prosecution of an action of ejectment in which the defendant sought to recover possession of the occupied strip. The court held that equity would not enjoin an action of ejectment by the defendant against the complainant to recover possession of the strip of land and dismissed the bill of complaint with costs.

In *Hardy* v. *Burroughs,* 251 Mich. 578, 232 N. W. 200, plaintiffs' bill of complaint alleged that the plaintiffs constructed on Lot 234 of Carton Park in Flint a dwelling house, that the lot was owned by the defendants Bur-

roughs, subject to outstanding land contracts in defendants Tanhersley, that plaintiffs constructed the dwelling by mistake, that the defendants Tanhersley had taken possession of the house and occupied it, that the defendants declined to make any adjustment with the plaintiffs, and that the value of the house was $1250.00. The plaintiffs made no charge of fraud or any conduct constituting estoppel of the defendants in standing by and knowingly permitting the plaintiffs to construct the house on the wrong lot. The trial court overruled the motion of the defendants to dismiss the bill of complaint and the defendants appealed. In the opinion the court used this language: "The question is, May the plaintiffs, the builders, sustain the bill as plaintiffs, except upon some ground of fraud or estoppel growing out of the conduct of the owners of the land, which, as has been said, is not in the case. On this question the authorities are divided. In 31 C. J. 315, it is said: 'According to some authorities a bonda fide occupant's right, in equity, to compensation for his improvements applies to him as defendant only, and does not give him the right to recover the value of his improvements after eviction by a direct affirmative suit against the owner of the property, although he made them innocently or through mistake, unless the owner of the land has been guilty of fraud, or of acquiescence after knowledge of his legal rights, or unless the parties have agreed upon compensation for the improvements. But according to other authorities, where an occupant in good faith has made improvements and has been evicted by the true owner, he may sue in equity for the value of his improvements without reference to any fraud or other misconduct on the part of the true owner. * * *.'" The opinion also contains these statements: "The better reasoning is that plaintiffs may maintain this bill. It is not equitable on the facts here before us that defendants profit by plaintiffs' innocent mistake, that defendants take all and the plaintiffs nothing. The fact that defendants need no relief and therefore seek none ought not to bar plaintiffs' right to relief in equity."

The court held that if, upon the hearing, the plaintiffs should make a case for equitable relief it would be proper to offer to the defendants by decree the privilege of taking the improvements at the fair value found by the court, or to release the occupied land to the plaintiffs upon payment by them of the fair value of the lot as found by the court, such option to be exercised within a reasonable time to be fixed by decree, and that if defendants declined or neglected to comply they should be required to convey the lot to the plaintiffs upon payment of its fair value.

In *Olin* v. *Reinecke,* 336 Ill. 530, 168 N. E. 676, it appeared that one of the plaintiffs, by mistake, after purchasing a lot in an addition, constructed improvements on another lot purchased by a defendant who placed title to the lot in another defendant. Though the defendants saw the improvements while they were being made they asserted that they did not know they were being made on their property until after they were completed. There was no finding of fraud or estoppel upon the part of the defendants although the court in the opinion stated that it was difficult to believe that the defendants did not know that the plaintiff had built the house on the wrong lot until after it was completed. The court held that the plaintiff, who had improved the defendant's lot by mistake, was entitled to a decree which required the defendant to pay the reasonable value of the improvements, or in case of failure or refusal to do so, the property should be sold and the proceeds distributed to the payment of the cost and expense of sale, to the defendant for the value of the lot, to the holders of mortgage notes, and to the plaintiff.

In *Pearl Township* v. *Thorp,* 17 S. D. 288, 96 N. W. 99, the township desired to sink an artesian well on a tract of two acres of land which it owned. It had the land surveyed and the surveyor placed a stake to indicate the place where the well was to be sunk. Some unknown person removed the stake and placed it on adjoining land owned by Nelson which was several feet from the

two acre tract. Nelson sold the land to Thorp and the well was drilled at a cost of $2300.00. The township brought suit against Thorp to obtain relief in equity on the ground of mutual mistake. The court granted the relief and by decree required Thorp to reimburse the township for the cost of the well, or to convey to the township, within a reasonable time, a one-half acre parcel of land upon which the well was situated.

In *McCreary* v. *Shields,* 333 Mich. 290, 52 N. W.2d 853, the court held that, to prevent the unjust enrichment of its owners, the owners of the lot on which a house was constructed by mistake should have the privilege of taking the improvements at their fair value or of conveying the property to the builders at its fair value and that if the owners of the lot on which the house was constructed by mistake refuse to take the improvements or to convey the lot at a fair value, conveyance of the lot to the builders of the improvements may be decreed upon payment of its fair value.

In *Schleicher* v. *Schleicher,* 120 Conn. 528, 182 A. 162, 104 A. L. R. 572, the Connecticut Supreme Court of Errors held that one who, believing himself to be the owner of realty, has in good faith made improvements or expenditures upon such property, is entitled on equitable principles to reimbursement by the true owner, of the amount to which the value of the property has been enhanced by such improvements or expenditures. In recognizing the right of the plaintiff to recover and in granting recovery, the court said "Any right of the plaintiff to recover must be based upon principles involved in the doctrine generally referred to as that of 'unjust enrichment.' A right of recovery under that doctrine is essentially equitable; its basis being that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff. The right of one who believes himself to be the owner of property to recover of the true owner the amount in which its value has been enhanced by improvements or expenditures the former has made in

good faith has its root in equitable principles of ancient origin. 2 Story, Equit. Jurisprudence (12th Ed.) §§799a, 1237; *Bright* v. *Boyd,* 1 *Story,* 478, Fed. Cas. No. 1875; Id., 2 Story, 605, Fed. Cas. No. 1876."

In *Voss* v. *Forgue,* Fla., 84 So. 2d 563, the court held that where a landowner mistakenly constructed a dwelling on a lot adjacent to one he owned and the two adjoining lots were substantially the same in value and the landowner was innocent of wrongdoing and the adjacent landowner was not shown to have been harmed, equity at the suit of the first landowner compelled both landowners to exchange deeds to their respective lots, upon payment by the first landowner of a certain sum and court costs. In the opinion the court said:

> "We have not before been called on to adjudicate this point but investigation reveals respectable authority both ways, depending largely on the circumstances and the equities shown in the particular case. Our attention is directed to what appellant contends to be the majority rule in 104 A. L. R. 580, as follows:

> " 'In a bare majority of the jurisdictions of this country wherein the question has clearly received consideration, support has been given to the rule that, not even in equity can one who has made improvements on the land of another, believing himself to be the owner, recover therefor, as plaintiff, where the owner has been guilty of no fraud, or acquiescence with knowledge, or other inequitable conduct.'

> "Appellant also calls our attention to what he contends the same authority (104 A. L. R. 588) designates as the minority rule as follows:

> " 'Even in the absence of fraud, acquiescence with knowledge, or other inequitable conduct on the part of the owner of land, one who, mistakenly believing himself to be the owner, in good faith makes improvements on premises, may, as plaintiff, recover therefor, by way of lien or otherwise, where the circumstances render such relief just and equitable.' "

In *Fitzpatrick* v. *Allied Contracting Company*, 24 Ill. 2d 448, 182 N. E.2d 183, the court, in discussing the general rule with respect to improvements by a stranger upon the land of another without his consent, said: "While, as a general rule, if a stranger improves the land of another without consent, the improvement becomes the property of the owner (*Olin* v. *Reinecke*, 336 Ill. 530, 168 N. E. 676), nevertheless, equity will not hesitate to soften the harshness and rigor of the rule of law, when the circumstances of the case require it to be done to meet the ends of justice. (*Cable* v. *Ellis*, 120 Ill. 136, 11 N. E. 188.) We recently stated the equitable rule in *Elder* v. *Clarke*, 385 Ill. 335, 339, 52 N. E.2d 778, 780; 'The rule is that where improvements of a permanent character are made in good faith by one in possession, believing himself to be a *bona fide* purchaser, or an owner for full value, and under circumstances justifying such a belief, and the expenditure is reasonable and of benefit to the estate, an allowance may be made in a court of equity, where title is found to be in another.' See also *Gilbreath* v. *Dilday*, 152 Ill. 207, 38 N. E. 572; *Lagger* v. *Mutual Union Loan and Building Ass'n*, 146 Ill. 283, 33 N. E. 946; *Hayes* v. *Davis*, 307 Ill. App. 440, 30 N. E.2d 521; Anno. 57 A. L. R. 2d 263."

In the recent case of *Beacon Homes, Inc.* v. *Holt*, 266 N. C. 467, 146 S. E.2d 434, the court said in the opinion: "It is as contrary to equity and good conscience for one to retain a house which he has received as the result of a bona fide and reasonable mistake of fact as it is for him to retain money so received. We, therefore, hold that where through a reasonable mistake of fact one builds a house upon the land of another, the landowner, electing to retain the house upon his property, must pay therefore the amount by which the value of his property has been so increased."

In Section 625, Chapter 11, Volume 2, Tiffany Real Property, Third Edition, the text contains this language:

"Since the rule that erections or additions made by one who has no rights to land are fixtures, and therefore not removable by him, even though he made them in the belief that he was the owner of the land, is calculated to cause hardship to an innocent occupant of another's land, by giving the benefit of his labor and expenditures to the landowner, the courts of this country, without either imputing fraud or requiring proof of it, hold it inequitable to allow one to be enriched under such circumstances by the labor and expenditures of another who acted in good faith and in ignorance of any adverse claim or title. Applying this doctrine of 'unjust enrichment,' a court of equity will, on the principle that he who seeks equity must do equity, refuse its assistance to the rightful owner of land as against an occupant thereof unless he makes compensation for permanent and beneficial improvements, made by the latter without notice of the defect in his title.

"According to one line of decisions, the innocent occupant will be allowed compensation for such improvements upon a bill filed by him against the true owner for the purpose.

"Under other decisions relief of this character is accorded only in a proceeding instituted by the true owner, as an incident to the relief given him."

See also 57 A.L.R.2d, Annotation, Compensation for Improvements Made or Placed on Premises of Another by Mistake, Sections 11 and 12, pages 281-294.

From the foregoing authorities it is manifest that equity has jurisdiction to, and will, grant relief to one who, through a reasonable mistake of fact and in good faith, places permanent improvements upon land of another, with reason to believe that the land so improved is that of the one who makes the improvements, and that the plaintiffs are entitled to the relief which they seek in this proceeding.

The undisputed facts, set forth in the agreed statement of counsel representing all parties, are that the plaintiff

W. J. Somerville in placing the warehouse building upon Lot 47 entertained a reasonable belief based on the report of the surveyor that it was Lot 46, which he owned, and that the building was constructed by him because of a reasonable mistake of fact and in the good faith belief that he was constructing a building on his own property and he did not discover his mistake until after the building was completed. It is equally clear that the defendants who spent little if any time in the neighborhood were unaware of the construction of the building until after it was completed and were not at any time or in any way guilty of any fraud or inequitable conduct or of any act that would constitute an estoppel. In short, the narrow issue here is between two innocent parties and the solution of the question requires the application of principles of equity and fair dealing between them.

It is clear that the defendants claim the ownership of the building. Under the common law doctrine of annexation, the improvements passed to them as part of the land. *Dawson* v. *Grow*, 29 W. Va. 333, 1 S. E. 564; *Bailey* v. *Gardner*, 31 W. Va. 94, 5 S. E. 636, 13 Am. St. Rep. 847. This is conceded by the plaintiffs but they assert that the defendants can not keep and retain it without compensating them for the value of the improvements, and it is clear from the testimony of the defendant William L. Jacobs in his deposition that the defendants intend to keep and retain the improvements and refuse to compensate the plaintiffs for their value. The record does not disclose any express request by the plaintiffs for permission to remove the building from the premises if that could be done without its destruction, which is extremely doubtful as the building was constructed of solid concrete blocks on a concrete slab, and it is reasonably clear, from the claim of the defendants of their ownership of the building and their insistence that certain fixtures which have been removed from the building be replaced, that the defendants will not consent to the removal of the building even if that could be done.

In that situation if the defendants retain the building and refuse to pay any sum as compensation to the plaintiff W. J. Somerville they will be unjustly enriched in the amount of $17,500.00, the agreed value of the building, which is more than eight and one-half times the agreed $2,000.00 value of the lot of the defendants on which it is located, and by the retention of the building by the defendants the plaintiff W. J. Somerville will suffer a total loss of the amount of the value of the building. If, however, the defendants are unable or unwilling to pay for the building which they intend to keep but, in the alternative, would convey the lot upon which the building is constructed to the plaintiff W. J. Somerville upon payment of the sum of $2,000.00, the agreed value of the lot without the improvements, the plaintiffs would not lose the building and the defendants would suffer no financial loss because they would obtain payment for the agreed full value of the lot and the only hardship imposed upon the defendants, if this were required, would be to order them to do something which they are unwilling to do voluntarily. To compel the performance of such an act by litigants is not uncommon in litigation in which the rights of the parties are involved and are subject to determination by equitable principles. An the right to require the defendants to convey the lot to the plaintiff W. J. Somerville is recognized and sustained by numerous cases cited earlier in this opinion. Under the facts and circumstances of this case, if the defendants refuse and are not required to exercise their option either to pay W. J. Somerville the value of the improvements or to convey to him the lot on which they are located upon his payment of the agreed value, the defendants will be unduly and unjustly enriched at the expense of the plaintiff W. J. Somerville who will suffer the complete loss of the warehouse building which by bona fide mistake of fact he constructed upon the land of the defendants. Here, in that situation, to use the language of the Supreme Court of Michigan in *Hardy* v. *Burroughs*, 251 Mich. 578, 232 N. W. 200, "It is not equitable

\* \* \* that defendants profit by plaintiffs' innocent mistake, that defendants take all and plaintiffs nothing."

To prevent such unjust enrichment of the defendants, and to do equity between the parties, this Court holds that an improver of land owned by another, who through a reasonable mistake of fact and in good faith erects a building entirely upon the land of the owner, with reasonable belief that such land was owned by the improver, is entitled to recover the value of the improvements from the landowner and to a lien upon such property which may be sold to enforce the payment of such lien, or, in the alternative, to purchase the land so improved upon payment to the landowner of the value of the land less the improvements and such landowner, even though free from any inequitable conduct in connection with the construction of the building upon his land, who, however, retains but refuses to pay for the improvements, must, within a reasonable time, either pay the improver the amount by which the value of his land has been improved or convey such land to the improver upon the payment by the improver to the landowner of the value of the land without the improvements.

It is pertinent to observe that, in cases involving the right to recover for improvements placed by mistake upon land owned by one other than the improver, the solution of the questions involved depends largely upon the circumstances and the equities involved in each particular case. Here, under the facts as stipulated by the parties, the equities which control the decision are clearly in favor of the plaintiffs.

To reverse the judgment of the circuit court the defendants cite and rely upon several cases which are clearly distinguishable upon their facts from the case at bar and are not applicable to or controlling of the decision in the instant proceeding.

In *Dawson v. Grow,* 29 W. Va. 333, 1 S. E. 564, the improver was guilty of negligence in not consulting the registration records, which would have informed her that

the property which she claimed had been previously conveyed to another by deed of record, and because of her negligence she was held not to be entitled to compensation for improvements. In *Hall* v. *Hall,* 30 W. Va. 779, 5 S. E. 260; *Williamson* v. *Jones,* 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891; *Bodkin* v. *Arnold,* 48 W. Va. 108, 35 S. E. 980; *Chesapeake and Ohio Railway Company* v. *Deepwater Railway Company,* 57 W. Va. 641, 50 S. E. 890; *Kelly* v. *Bank of Mount Hope,* 117 W. Va. 260, 185 S. E. 215; *Spradling* v. *Spradling,* 118 W. Va. 308, 190 S. E. 537; and *Green* v. *Mullins,* 146 W. Va. 958, 124 S. E.2d 244, the title of the improver in each instance to the land improved was questionable and the improvements in each instance were made under a mistake of law concerning such title against which, as stated in the *Hall* case, "courts cannot relieve," and for that reason compensation for improvements was denied. In *Shears* v. *The Traders Building Association,* 58 W. Va. 665 52 S. E. 860; *Columbus Onyx and Marble Company* v. *Miller,* 74 W. Va. 686, 82 S. E. 1078; *Barnes* v. *Cole,* 77 W. Va. 704, 88 S. E. 184; *Carroll-Cross Coal Company* v. *Abrams Creek Coal and Coke Company,* 83 W. Va. 205, 98 S. E. 148; and *Fisher* v. *West Virginia Coal and Transportation Company,* 137 W. Va. 613, 73 S. E.2d 633, questions of estoppel were involved which are not presented in the case at bar. In *Harrison* v. *Miller,* 124 W. Va. 550, 21 S. E.2d 674, a constructive trustee of real estate placed improvements upon it with his individual funds. At the time he did so he was chargeable with knowledge that others were beneficially entitled to such land and for that reason he was not entitled to charge the land with the money which he had expended for such improvements.

In *Cautley* v. *Morgan,* 51 W. Va. 304, 41 S. E. 201, the defendants Morgan and Huling and the plaintiff Cautley were owners of adjoining lots fronting on Quarrier Street in Charleston, West Virginia. The plaintiff, being desirous of building a party wall between the lots for a business building on her lot, entered into an agreement

with the defendants by which, among other things, she was given the right to construct the wall to the extent of ten inches upon the lot of the defendants. In constructing the wall the plaintiff, by mistake, built it six inches farther on the land of the defendants than the ten inches provided for in the contract. The wall was completed in 1893 and in the fall of 1899 the defendants, desiring to use the wall, discovered the mistake. They notified the plaintiff and, after unsuccessful efforts were made to adjust the matter, the defendants instituted an action of ejectment against the plaintiff to recover the land on which the plaintiff had encroached in the construction of the wall. In a suit by the plaintiff to enjoin the prosecution of the action of ejectment, the court refused the injunction and dismissed the bill with costs. In the opinion the court said: "It seems to be one of those cases where there was no intentional fault on the part of either, but by the improper action, though unintentional, of one of the parties a mistake was made, whereby one party or the other must suffer a hardship. This being the case, it is held: That that party, upon whom a duty devolves and by whom the mistake was made, should suffer the hardship rather than he who had no duty to perform and was no party to the mistake." It appears, however, from the facts that the plaintiff, in undertaking to build the wall and assuming the responsibility of fixing the location herself, had the duty to see that it was properly located and that she had sufficient data to enable her to avoid the mistake if she had used the data with proper care. In other words the plaintiff, by not making proper use of the available data, was guilty of careless or negligent conduct in making the mistake. She was limited by the contract to place the wall upon only ten inches of the defendants' property and in making an encroachment of more than ten inches she was also guilty of breach of the contract. Accordingly she was not entitled to equitable relief and the case is distinguishable from the case at bar for those reasons and for the additional reason that the loss of a portion of the wall of the

width of only six inches would be a relatively insignificant hardship compared to the complete loss here involved of an entire building of the admitted value of $17,500.00.

In reaching the conclusion to deny the injunction, the court followed closely the case of *Kirchner* v. *Miller,* 39 N. J. Eq. 355, cited and discussed earlier in this opinion. In that case, as so indicated, the plaintiff and the defendant were owners of adjoining lots, the plaintiff employed a surveyor to fix the dividing line which he mislocated, and the plaintiff, supposing that he was building on his own land, inadvertently placed his house a few inches on the lot of the defendant who was not aware of the encroachment. The court held that equity would not enjoin an action of ejectment by the defendant against the plaintiff to recover possession of the strip of land on which he built the house in question. In that case it appeared, also as previously indicated, that the plaintiff could have removed the part of the building on the lot of defendant at an expense of $75.00 and the defendant admitted that the loss of the strip would cause no injury to his house but would reduce the value of the lot in the amount of $150.00. It is evident that the court in the *Kirchner* case was influenced by the lack of hardship sustained by the plaintiff by reason of his mistake, for in the opinion the court said "Where there is no hardship there is no ground for interference. This case is not one for the application of the doctrine." In the *Kirchner* case, in commenting upon the holding in *McKelway* v. *Armour,* 10 N. J. Eq. (2 Stock.) 115, in which it was held that the plaintiff was entitled to be paid for the improvements by the landowner or that the landowner was required to sell his property to the plaintiff at a price to be fixed by the court or to exchange properties with him, the court, by way of dictum, said: "The exercise of such a judicial power, unless based upon some actual or implied culpability on the part of the party subjected to it, is a violation of constitutional right." The same statement, also by way of dictum, appears in the opinion in the *Cautley* case and it also appears, as a cita-

tion from the *Kirchner* case, in the opinion in *Olin* v. *Reinecke,* 336 Ill. 530, 168 N. E. 676. In no other of the many cases that have been considered does any such statement appear. Such statement, being mere dictum, is contrary to the holdings in numerous cases previously cited in this opinion, in which the conveyance of the improved property by the landowner was required and held to be proper. Of course, in an ordinary situation, no court could or would undertake to require a person to convey his land to another who might desire it, but such conveyance may properly be required in litigation in which the rights of the parties, including such landowner, are involved and which are subject to determination upon principles of equity.

The judgment of the Circuit Court of Wood County is affirmed.

*Affirmed.*

CAPLAN, JUDGE, dissenting:

Respectfully, but firmly, I dissent from the decision of the majority in this case. Although the majority expresses a view which it says would result in equitable treatment for both parties, I am of the opinion that such view is clearly contrary to law and to the principles of equity and that such holding, if carried into effect, will establish a dangerous precedent.

Basically, I believe that the principles expressed in *Cautley* v. *Morgan,* 51 W. Va. 304, 41 S. E. 201, reflect my view of this matter and that that case cannot realistically be distinguished from the instant case, as was attempted in the majority opinion. In that opinion it was said that the plaintiff who encroached upon the defendant's property was guilty of "careless or negligent conduct in making the mistake." The opinion reasoned that the plaintiff had the duty to see that the wall was properly located and that she had sufficient data to enable her to avoid the mistake if she had used the data with proper care. Certainly, in the instant case the plaintiff, had he caused to be made a proper survey and had

exercised proper care, would have constructed the subject building on his own property rather than on that of the defendant. It occurs to me that the failure to use proper care is more evident in this case than it was in *Cautley*.

The majority opinion appears to rely on *McKelway* v. *Armour*, 2 Stock (N. J. Eq.) 115 for the proposition that the owner of property upon which a building was mistakenly built must either purchase the building or sell his property. This case, decided in 1854, was substantially overruled some thirty years later by *Kirchner* v. *Miller*, 39 N. J. Eq. 355 wherein the court said of the decision in *McKelway*, "[t]he exercise of such a judicial power, unless based upon some actual or implied culpability on the part of the party subjected to it, is a violation of constitutional right. No tribunal has the power to take private property for private use. The Legislature itself cannot do it." This precise language was used by the Court in *Cautley* in rejecting the view taken in *McKelway*. In Cautley the Court held: "That that party, upon whom a duty devolves and by whom the mistake was made, should suffer the hardship rather than he who had no duty to perform and was no party to the mistake." See 7 M. J., Equity, Section 25.

I am of the opinion that the *Cautley* case is not distinguishable from the instant case and that the language which says that such taking of property violates a constitutional right is not mere dictum as expressed in the majority opinion.

I am aware of the apparent alarmist posture of my statements asserting that the adoption of the majority view will establish a dangerous precedent. Nonetheless, I believe just that and feel that my apprehension is justified. On the basis of unjust enrichment and equity, the majority has decided that the errant party who, without improper design, has encroached upon an innocent owner's property is entitled to equitable treatment. That is, that he should be made whole. How is this accomplished? It is accomplished by requiring the owner

of the property to buy the building erroneously constructed on his property or by forcing (by court edict) such owner to sell his property for an amount to be determined by the court.

What of the property owner's right? The solution offered by the majority is designed to favor the plaintiff, the only party who had a duty to determine which lot was the proper one and who made a mistake. The defendants in this case, the owners of the property, had no duty to perform and were not parties to the mistake. Does equity protect only the errant and ignore the faultless? Certainly not.

It is not unusual for a property owner to have long range plans for his property. He should be permitted to feel secure in the ownership of such property by virtue of placing his deed therefor on record. He should be permitted to feel secure in his future plans for such property. However, if the decision expressed in the majority opinion is effectuated then security of ownership in property becomes a fleeting thing. It is very likely that a property owner in the circumstances of the instant case either cannot readily afford the building mistakenly built on his land or that such building does not suit his purpose. Having been entirely without fault, he should not be forced to purchase the building.

In my opinion for the court to permit the plaintiff to force the defendants to sell their property contrary to their wishes is unthinkable and unpardonable. This is nothing less than condemnation of private property by private parties for private use. Condemnation of property (eminent domain) is reserved for government or such entities as may be designated by the legislature. Under no theory of law or equity should an individual be permitted to acquire property by condemnation. The majority would allow just that.

I am aware of the doctrine that equity frowns on unjust enrichment. However, contrary to the view expressed by the majority, I am of the opinion that the

circumstances of this case do not warrant the application of such doctrine. It clearly is the accepted law that as between two parties in the circumstances of this case he who made the mistake must suffer the hardship rather than he who was without fault. *Cautley* v. *Morgan,* supra.

I would reverse the judgment of the Circuit Court of Wood County and remand the case to that court with directions that the trial court give the defendant, Jacobs, the party without fault, the election of purchasing the building, of selling the property, *or* of requiring the plaintiff to remove the building from defendant's property.

I am authorized to say that Judge Berry concurs in the views expressed in this dissenting opinion.